**APRIL MARKIEWICZ,**                        **CIVIL ACTION NO.: 2:20-CV-00805**

      **Plaintiff,**

                               **DISTRICT JUDGE: JAY C. ZAINEY**

**vs.**

**GALLOWAY, JOHNSON, TOMPKINS,**

**BURR AND SMITH, APLC**                        **MAGISTRATE: KAREN WELLS ROBY**

      **Defendant.**

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff, April Markiewicz, ("Mrs. Markiewicz") pursuant to Rule 56 of the Federal Rules of Civil Procedure submits her Opposition to the Motion for Summary Judgment filed by Defendant, Galloway, Johnson, Tompkins, Burr, and Smith APLC ("Galloway").

## RELEVANT BACKGROUND

April Markiewicz, a former legal assistant with a paralegal certificate, was hired by Galloway on April 3, 2008 and worked with them for over 11 years making approximately $24.05 an hour until her termination on June 2, 2019.[1] During her employment, Mrs. Markiewicz had several health conditions and her husband suffered from stage 3 aggressive prostate cancer which was diagnosed in June, 2017.[2] Mrs. Markiewicz was married to Mark Markiewiciz for twenty years, and they had a son.[3] After Mr. Markiewicz's cancer diagnosis, he was treated with bone scan monitoring, eventually more aggressive monitoring at MD Anderson, and frequent appointments to check his white blood count.[4] Mr. Markiewicz opted not to have radiation and chemotherapy, and had to undergo more frequent and aggressive

---

[1] Exhibit 1- Markiewicz Depo 6/14/2021, 11:22-11:24; 13:10-13:11; 15:8-15:21, 16:18-16:23; 37:13-37:19
[2] Exhibit 1-Markiewicz Depo 6/14/2021, 23:5-23:24; Exhibit 2-Markiewicz Depo 2/11/2022, 62:2-62:6
[3] Exhibit 1-Markiewicz Depo 6/14/2021, 10:12-10:17;
[4] Exhibit 1-Markiewicz Depo 6/14/2021, 23:17-23:25

monitoring.[5] It was Mrs. Markiewicz's understanding that the only thing that would "cure" the cancer was removal of the prostate.[6] Mr. Markiewicz was on numerous medications and ultimately elected to receive the surgery on May 1, 2019 because a scan indicated that the cancer had possibly spread to other parts of his body and the tumor was right on the membrane.[7] Mr. Markiewicz also had related kidney failure which required additional monitoring.[8]

Prior to the cancer diagnosis, Mrs. Markiewicz worked a full time schedule and raised no "red flags."[9]  In 2018, Mrs. Markiewicz had six medical procedures on her neck which were performed under anesthesia, and her husband was treated for his kidney disease during the 40 days of leave she took.[10] Mrs. Markiewicz also took leave to care for her husband by administering medicine and suppositories, cooking meals, picking up prescriptions and helping to manage his serious mental health condition during 2018.[11] Because Mrs. Markiewicz could not force her suicidal husband to go to an appointment at MD Anderson, they missed the appointment and had to stay home to provide care for him.[12] The cancer surgery was rescheduled four or five times in 2018 and they would drive halfway to MD Anderson only to return because of his mental health issues.[13]

Mrs. Markiewicz was not given individualized or any notice that she qualified for FMLA intermittent leave in 2018 as required.[14] When she was granted FMLA leave in 2019 for the cancer surgery, she was fired three weeks after returning.[15] Mrs. Markiewicz executed an

---

[5] Exhibit 1-Markiewicz Depo 6/14/2021, 24:2-24:10
[6] Exhibit 1- Markiewicz Depo 6/14/2021, 24:20-25:12
[7] Exhibit 1-Markiewicz Depo 6/14/2021, 25
[8] Exhibit 1-Markiewicz Depo 6/14/2021, 61:22-61:25; 62:1-62:5
[9] Exhibit 3-Galloway 000098; Exhibit 12-Galloway 00049
[10] Exhibit 2-Markiewicz Depo 2/11/2022, 61:7-61:24
[11] Exhibit 2-Markiewicz Depo 2/11/2022, 58:17-60:5
[12] Exhibit 2-Markiewicz Depo 2/11/2022, 54:17-55:12
[13] Exhibit 2-Markiewicz Depo 2/11/2022, 47:22-48:12
[14] Exhibit 7-Herrington Depo 47:7-47:21; see 29 CFR § 825.300
[15] Exhibit 3- Galloway 000098-000121

EEOC charge on November 22, 2019.[16]

## 1. FMLA Retaliation Claim

Galloway does not dispute that Mrs. Markiewicz can prove a prima facie case of retaliation and focuses their argument solely on whether Plaintiff can prove that the alleged reason for termination produced by Galloway is pretextual as set forth in *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 768 (5th Cir. 2001). Thus, for purposes of this motion, Plaintiff addresses the issue of pretext and the applicable standard for causation.

### a. The proper standard for causation is the "mixed motive" instruction but under both standards of causation, Plaintiff can prove pretext by a preponderance of the evidence.

In a recent 2022 case, the Fifth Circuit reaffirmed its holding in *Richardson* that the law of this circuit permits a mixed-motive instruction when there is evidence that both legitimate and illegitimate motives played a role in the challenged employment action. *Stanton v. College*, 2022 U.S. App. LEXIS 6338, at *15 (5th Cir. Mar. 11, 2022) (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327 (5th Cir. 2005)).

In *Stanton* the court explains that the two cases cited to support the use of the "but for" causation standard and adopted in Galloway's argument "ignores the fact that *Gross* and *Nassar* interpreted different statutes with different language that the FMLA provision at issue here." *Stanton v. College*, 2022 U.S. App. LEXIS 6338, at *15 (5th Cir. Mar. 11, 2022). The Court held that "we need not address *Nassar*'s effect, if any, on FMLA retaliation claims." *Stanton v. College,* 2022 U.S. App. LEXIS 6338, at *13 (5th Cir. Mar. 11, 2022)

---

[16] Exhibit 4-EEOC FOIA Response Bates No. 19-20

The Court's reasoning in *Gross* is based on its interpretation of statutory language contained in the ADEA, and is not applicable to an FMLA action which does not have a substantially similar provision. *Id.* at 176-77.

In *University of Texas Southwestern Medical Center. v. Nassar*, the Supreme Court interpreted one of Title VII's anti-retaliation provisions, which differ significantly from the language in the FMLA. *University of Texas Southwestern Medical Center. v. Nassar,* 570 US 338 (2013).

Neither of these cases dealt with FMLA provisions, and the Fifth Circuit has declined to address the impact of *Gross* and *Nassar* on the *Richardson* mixed-motive holding. For example, In *Ion v. Chevron USA, Inc.* the court expressly declined to do so because "the parties briefed, argued, and [did not] contest resolution of [the] case under the mixed-motive rubric." 731 F.3d at 390. Thus, the Court did not "decide whether *Nassar*'s analytical approach applies to FMLA-retaliation claims and, if so, whether it requires a plaintiff to prove but-for causation." *Ion v. Chevron USA, Inc.* 731 F. 3d 379, 391 (5th Cir. 9/26/2013).

As further explained in *Stanton*, a holding that the "but-for" causation applies in all FMLA retaliation cases "would be in tension with our *Richardson* jurisprudence as well as FMLA jurisprudence form at least two sister circuits.[17] *Stanton v. College*, 2022 U.S. App. LEXIS 6338, at *15 (5th Cir. Mar. 11, 2022).

As it currently stands, *Richardson v. Monitronics Int'l, Inc.* is the law of this circuit, which permits a mixed motive standard when there is evidence that both legitimate and

---

[17]The Second Circuit has concluded that a "motivating factor" instruction is required in FMLA retaliation cases, and that "but for" causation is inconsistent with Chevron deference to the Department of Labor's regulation. *Woods v. Start Treatment Recovery Centers*, 864 F.3d 158, 168 (2nd Cir. 7/19/2017); see also *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984). Similarly, the Third Circuit has concluded, also based on Chevron deference, that the Department of Labor's "use of a mixed- motive framework is not inconsistent with *Nassar* and *Gross*, "and that the "mixed -motive approach is a permissible construction of the statute."*Egan v. Delaware River Port Auth*, 851 F.3d 263, 274 (3rd Cir. 3/21/17).

illegitimate motives played a role in the challenged employment action and should be applied to the case at hand. *Richardson v. Monitronics Int'l, Inc., 434 F.3d 327 (5th Cir. 2005).*

    **b.**     **Mrs. Markiewicz's request for protected leave was the cause of her termination and the alleged reason set forth by Galloway is pretextual.**

As reasoned by the Court in *Richardson v. Monitronics Int'l, Inc.,* even if there was a legitimate reason to terminate Mrs. Markiewicz, there was a least one discriminatory motivating factor. An employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or— and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d at 333 (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005) ( See also *McGill v. Bd. of Supervisors of the Univ. of La. Sys*., 2014 U.S. Dist. LEXIS 148298, at *12 (E.D. La. Oct. 16, 2014)

The timeline of Mrs. Markiewicz's various requests for leave is important in assessing the motivating factor in this case because it corroborates Ms. Andrea Albert's statements evidencing discriminatory *animus* regarding Plaintiff's requests for leave which were FMLA eligible and calls into question the credibility of Galloway's alleged grounds for termination.

On October 2, 2017, Plaintiff wrote an email to Human Resources advising that her husband had cancer and that she would need upcoming leave.[18] On February 22, 2018, Mrs. Markiewicz advised the HR Director that she was going to need intermittent leave due to her husband's cancer treatment and his surgery.[19] The HR Director does not recall talking to Plaintiff

---

[18] Exhibit 6-30b6 Depo 55:15-58:19
[19] Exhibit 2-Markiewicz Depo 2/11/2022, 98:20-98:25, 99:1-99:5; Exhibit 5-Markiewicz Bates 279-280; Exhibit 6-30b6 Depo 63:24-66:13

about FMLA and Mrs. Markewicz was not granted FMLA protected leave in 2018 although she should have been.[20]

Throughout 2018, Mrs. Markiewicz had six medical procedures on her neck and went under anesthesia, and her husband was treated for his related kidney disease and urology during the 40 days of leave she took.[21] Mrs. Markiewicz also took time off from work to care of her husband by assisting him with adminstering medicine and suppositories, cooking meals, picking up prescriptions and managing his cancer related serious mental health condition of suicidal ideation during 2018.[22]

Employee Benefits Coordinator, Ms. Candace Herrington, also failed to discuss FMLA with Mrs. Markiewicz because she contends that Mr. Markewicz was going to treat the cancer "naturally," and she "did not forsee" Mrs. Markiewicz missing a lot of work in 2018.[23] Mrs. Herrington saw Mrs. Markiewicz miss work a few times for appointments but did not speak to Mrs. Markiewicz about FMLA because Mr. Markiewicz was allegedly "getting a second opinion."[24]

The documents produced in discovery prove that Mrs. Markiewicz was taking both unpaid and paid leave in 2018 to attend medical appointments for her own serious medical conditions, including migraines and neck issues, and to attend to her husband's serious medical conditions of cancer and other related appointments.[25]

During this time, Mrs. Markiewicz should have been offered and approved for FMLA protected intermittent leave or a reduced working schedule.[26] Instead, Mrs. Markiewicz used

---

[20] Exhibit 6-30b6 Depo 63:24-66:13; Exhibit 3-Galloway 000098-000121
[21] Exhibit 2-Markiewicz Depo 2/11/2022, 61:7-61:24
[22] Exhibit 2-Markiewicz Depo 2/11/2022, 58:17-60:5
[23] Exhibit 7-Herrington Depo 47:7-47:21; 41:15-41:25
[24] Exhibit 7-Herrington Depo 48:6-48:25
[25] Exhibit 3-Galloway 000098-000121; Exhibit 8-Segura 000029-000042;Segura 000053-000062; Exhibit 9-Sessions 00004-00007; Exhibit 10-Markiewicz Bates No. 2963-2965.
[26] 29 CFR § 825.202

both unpaid and paid time off which lowered her working hours to under thirty hours a week and resulted in a disciplinary action and ultimately, the real reason for her termination- *her requests for FMLA eligible leave.*

On November 14, 2018 Mrs. Markiewicz was disciplined by the HR Director and Ms. Albert about a concern about her hours and losing health insurance because she was not working at least 30 hours a week. [27] Ms. Albert and the HR Director advised her that she was *required* to work a full time schedule the first quarter of 2019 to keep health benefits even though the HR Director knew at this time she had requested leave for medical reasons. [28]

Three months later, on February 12, 2019, Ms. Albert stated to Mrs. Markiewicz that she had been without a legal assistant for 4 months in 2018 and she did not want to have a repeat of that in 2019.[29] The most reasonable interpretation of Ms. Albert's statement is that Mrs. Markiewicz's requests for leave in 2018 were deemed unacceptable and would create an issue if they recurred in 2019.  The next day, on February 13, 2019, Mrs. Markiewicz informed Ms. Albert that she was requesting leave for her husband's upcoming cancer surgery starting on May 1, 2019.[30]

Two days later, on February 15, 2019 Mrs. Markiewicz had a meeting with managing attorney, Tim Hassinger and her supervisor, Ms. Albert where she was forced to sign a "final written warning" citing violations that were not discussed in the meeting such as gossipping.[31]

Although Mrs. Markiewicz was ultimately "granted" FMLA by the office manager for the surgery on May 1, 2019, she was fired by Ms. Albert three weeks after her FMLA leave. [32]

---

[27]  Exhibit 6-30b6 Depo 67:22-70:19; Exhibit 11-Galloway 000555
[28]  Exhibit 6-30b6 Depo 63:24-66:13;  67:22-70:19; Exhibit 5-Markiewicz Bates 279-280
[29]  Exhibit 7-Herrington Depo 122:1-122:11
[30]  Exhibit 7-Herrington Depo 126:10-126:17; Exhibit 13-Markiewicz Bates 111
[31] Exhibit 1-Markiewicz Depo 6/14/2021, 93:13-93:22; 103:15-105:24; Exhibit 12-Galloway 000047-000048. Although the Final Written Warning discusses Mrs. Markiewicz's need to take daily 30 minute  lunch breaks, it does not state that she took a lunch without clock off as alleged by Ms. Albert.
[32]R. Doc. 40-9 pg. 53-54; Galloway 00199-000200. Mrs. Markiewicz returned on May 10, 2019 and last work day

i. **Ms. Albert's statements opposing FMLA eligible leave in 2019 in addition to discipline in November 2018 is proof of discriminatory *animus*.**

Galloway glosses over the sequence of events that firmly supports a finding that the motivating factor for termination was discriminatory. Putting aside the three week proximity between Mrs. Markiewicz's return from FMLA leave and her termination, Mrs. Markiewicz's request for leave to attend her husband's cancer surgery occurred on February 13, 2019 *before* the decision to terminate was allegedly made by her supervising attorney, Ms. Albert and *after* Ms. Albert's comments on February 12, 2019. Ms. Albert's statements were memorialized in notes taken by the office manager wherein Ms. Albert explained to Mrs. Markiewicz that she "went without a legal assistant for 4 months last year (due to Mrs. Markiewicz's absences in 2018), and we agreed it would not happen again this year."[33] Ms. Albert also told Mrs. Markiewicz that "you're always absent because of your migraines."[34]

Ms. Albert, who is an attorney, made a material misrepresentation to Mrs. Markiewicz and said that if Mrs. Markiewicz were to be put on FMLA leave she would lose her health insurance benefits which Galloway conceded was not correct.[35] FMLA leave provides for the maintenance of health benefits while on leave.[36] This misrepresentation created a critical issue for Mrs. Markiewicz as she and her husband were dependent on these benefits as they dealt with his serious medical issues.[37]

Although Ms. Albert states one ground for termination in her deposition- namely the failure to clock out when taking a lunch, the HR Director provided the Louisiana Workforce Commission with several "disciplinary reasons" for the termination which include, Mrs.

---

was May 31, 2019.
[33] Exhibit 7-Herrington Depo 122:1-122:11; Exhibit 14-Galloway Bates 00002 and Exhibit 12-Galloway Bates 000048
[34] Exhibit 1-Markiewicz Depo 6/14/2021 188:3-188:7
[35] Exhibit 6-30b6 Depo 97:12-98; Exhibit 13-Markiewicz Bates 000110
[36] 29 C.F.R. § 825.210
[37] Exhibit 2-Markiewicz Depo 2/11/2022, 17:21-18:5

Markiewicz needing to work a full time schedule of over 30 hours a week from November 14, 2018 into the first quarter of 2019. [38]

The Fifth Circuit, in *Ion v. Chevron USA, Inc.,* reviewed both the statements made in a termination letter and statements made by the general manager which the court concluded were evidence of Chevron's retaliatory motivation. *Ion v. Chevron USA, Inc.* 731 F. 3d 379, 391 (5th Cir. 9/26/2013). The statements made in the termination document included the mention of absences from work in the "litany of other complaints about [Ion's] actions and showed that Chevron considered FMLA protected leave in terminating him. *Id.* The Court also reviewed the statements made by the general manager indicating that he was upset that Ion was seeking FMLA qualified time off and found that a jury could conclude that the general manager was attempting to stop Ion from taking FMLA leave or sought to punish him for taking FMLA leave and that these statements created a genuine issue of fact. *Ion v. Chevron USA, Inc.* 731 F. 3d 379, 391 (5th Cir. 9/26/2013)

Here, Mrs. Albert was upset that Mrs. Markiewicz had taken leave in 2018, as reflected in Ms. Herrington's meeting notes of February 12, 2019.[39] Ms. Albert also misrepresented to Mrs. Markiewicz that if she were to be put on FMLA leave she would lose her health insurance benefits in an attempt to stop Mrs. Markiewicz from taking FMLA leave.[40]

The leave Mrs. Markiewicz took in 2018 was FMLA eligible and is similar to the leave taken by the plaintiff in *Ion.* *In Ion,* the plaintiff requested leave to care for his son who was not eating or adjusting well, but the plaintiff requested the leave before being informed of the FMLA "program." *Ion v. Chevron USA, Inc.* 731 F. 3d 379, 383 (5th Cir. 9/26/2013). As in *Ion*, a reasonable jury could conclude that Ms. Albert was attempting to stop or punish Mrs.

[38] Exhibit 6-30(b)(6) Deposition, Andrea Albert pp. 262 – 263; Exhibit 11-Galloway 000555.
[39] Exhibit 7-Herrington Depo 122:1-122:11;Exhibit 14-Galloway Bates 00002 and Exhibit 12-Galloway Bates 000048
[40] Exhibit 6-30b6 Depo 97:12-98; Exhibit 13-Markiewicz Bates 000110

Markiewicz for taking FMLA leave, and this potential interpretation creates a genuine issue of fact.

  ii.  **Explanation given for termination is not credible and thus pretextual.**

Assuming *arguendo* that the "but-for" standard applies, the explanation given for termination is unworthy of credence. A plaintiff can establish pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Galloway has produced conflicting explanations for termination. Ms. Albert testified that Mrs. Markiewicz was terminated because "[s]he took a lunch. She did not clock out. And I made the decision at that point that I would start looking for her replacement."[41] Ms. Albert testified that this decision occurred the following week on Friday which would have been February 22, 2019.[42] Ms. Albert also testified that she made the decision at the "end" of February.[43]

Ms. Albert testified that "[t]he next week I was out of town for three days in Charlotte, North Carolina, *and received* [notice] that she was not taking her lunches again the very next week."[44] However, the documents produced in this case indicate that Ms. Albert *received an email* on March 6, 2019 from Ms. Herrington, and there was no information in that email given to Ms. Albert about February 22, 2019, the day Ms. Albert alleges she knew Mrs. Markiewicz did not clock out for lunch.[45] More importantly, Ms. Albert did not have access to Mrs. Markiewicz's time record and could not know whether she clocked in or out February 22, 2019

---

[41] Exhibit 6-30(b)(6) Depo, Albert 262 – 263
[42] Exhibit 6- 30(b)(6) Depo, Albert 262 – 263
[43] Exhibit 6- 30(b)(6) Depo, Albert 262:17- 263:13
[44] Exhibit 6-30(b)(6) Depo, Albert 262 – 263
[45] Exhibit 15-Galloway 000530-000531

without getting the information from the HR Director Tracie Ragland or from Ms. Herrington.[46]

If Ms. Albert had made the decision to terminate Mrs.Markiewicz on February 22, 2019 or even at the "end" of February then she had no reason to ask if Mrs. Markiewicz had clocked out for lunch on March 6, 2019 because the decision to terminate had already been made. However, Ms. Albert asked Ms. Herrington to check if Mrs, Markiewicz clocked out for lunch on March 6, 2019 because she saw Mrs. Markiewicz in the kitchen.[47] Incidentally, Mrs. Markiewicz did clock out on March 6, 2019 and took lunch.[48]

At least two other legal assistants working for Galloway during the same time period failed to strictly adhere to this policy regarding taking lunch but neither was subject to any sort of discipline. Susan Klein, another legal assistant that worked alongside Mrs Markiewicz in 2018 also worked through lunch multiple times and was neither disciplined nor terminated for failing to clock out for lunch and/or for eating lunch without clocking off.[49] In fact, when Ms. Klein did take a lunch; she was not always taking thirty minute lunches and would instead take 13 minute 17 minute or 20 minute lunches in violation of the stated 30 minute policy.[50] Ms. Klein also witnessed another legal assistant, Connie Roddy eat lunch at her desk while working.[51]

Hope Guidry, an ex-employee of Galloway was also working through lunch and was not terminated for failing to clock out for lunch or for eating lunch without clocking off.[52] Like Ms. Klein, Ms. Guidry also took lunches under 30 minutes at times, and she took unpaid leave like Mrs. Markiewicz.[53]

---

[46] Exhibit 6-30(b)(6) Depo, Albert 210:19-211:1; 257:3-257:5
[47] Exhibit 15- Galloway 000530-000531
[48] R. Doc. 40-9, pg. 51 Galloway 000197
[49] Exhibit 26-Declaration of Sue Klein; Exhibit 16-Galloway 000608-000628. See no lunches taken 1/15/18, 1/16/18, 1/19/2018, 1/25/18, 1/31/18, 2/8/18, 2/9/2018, 2/12/18, 2/19/18, 2/23/18, 2/27/18, 2/27/18, 4/12/18, 4/26/18, 4/27/18 and 5/17/18.
[50] Exhibit 16-Galloway 000608-000628, see 5/3/18, 5/22/18, 6/18/18, 6/20/18 for example.
[51] Exhibit 26-Declaration of Sue Klein
[52] Exhibit 17-Galloway 000391-000403. See 1/25/18, 2/21/18, 2/9/18, 2/21/18 and 6/19/19.
[53] Exhibit 17- Galloway 000391-000403. See 3/5/18 and 3/6/18 for under 20 minute lunches and 6/19/18, 7/20/18,

Galloway has not produced any documented evidence proving that Mrs. Markiewicz ate lunch in the kitchen without clocking out.[54] Mrs. Markiewicz testified that she worked on the clock during lunchtime when attorneys knew she was eating, and the attorneys would continue to engage her with work.[55] Ms. Albert's explanation of the grounds for termination is not worthy of credence because 1) she displayed discriminatory *animus* in her statements against taking FMLA leave in 2019; 2) there is no documentation that Mrs. Markiewicz took a lunch without punching out and on the one occasion that Ms. Albert asked HR if she clocked out on March 6, 2019, she did clock out; and 3) other individuals who failed to clock out for lunch while eating lunch or who failed to take a lunch were not terminated for those reasons.

In sum, if Mrs. Markiewicz had not taken leave and had continued to work over 30 hours a week; she would not have been terminated even though she may have failed to clock out for lunch or failed to take lunch some days. In fact, Ms. Herrington stated that prior to last year (2018), Mrs. Markiewicz's average hours had not dropped so low that it raised a red flag.[56] After what happened last year (2018) and because Mrs. Markiewicz was at risk of losing benefits eligibility, Ms Herrington was instructed to monitor her time to prevent it from happening again this year.[57] This was done so that Ms. Albert was not inconvenienced in 2019 as she was in 2018, despite legitimate FMLA needs. Thus the termination reason given by Ms. Albert is not worthy of credence and was pretextual.

iii. **The grounds for termination are inconsistent and/or conflicting and merit an inference of pretext.**

After Mrs. Markiewicz was terminated, Galloway filed an objection to her application for

---

7/28/18, 9/20/18 and 11/29/18 for unpaid leave.
[54] Exhibit 6- 30b6 Depo Allbert 126:6-126:12
[55] Exhibit 2-Markiewicz Depo 6/14/2021, 114:6-114:11
[56] Exhibit 12-Galloway 000049
[57] Exhibit 12-Galloway 000049

unemployment benefits. The documentation sent to the Louisiana Workforce Commission provides several different reasons in addition to not clocking out for lunch.[58] Under "explain reasons for separation" Galloway put "Please see attached. Claimant was in violation of multiple written policies and placed on final warning."[59]

The memo sent by Ms. Herrington to the Louisiana Workforce Commission attached to the form stated that "April was terminated on June 2, 2019 for the below disciplinary reasons."[60]

| March 7, 2018 | Andrea Albert and Candice Herrington met with April Markiewicz to discuss her arrival time and failure to clock out for lunch even though she was taking a lunch break every day (for ___ months). (See Exhibit 1 – Written Warning signed by April) |
| June 28, 2018 | Andrea Albert and Candice Herrington met with April Markiewicz to discuss gossiping in the office. (See Exhibit 2 – Written Warning signed by April)) |
| November 14, 2018 | Andrea Albert and Tracie Ragland met with April Markiewicz regarding the abuse of taking unpaid PTO with prior approval and how this effected her average weekly hours worked. April was told she needed to work a full time schedule from this point through the first quarter of 2019 in order to keep her full time status and eligibility for benefits. (See Exhibit 3 – Tracie's notes and report showing April's average hours worked per week for 2018) |
| February 12, 2019 | PTO requests were due in Netchex by 5pm on February 11, 2019. April failed to submit a PTO request and it was entered for her by HR Assistant, Alexa Thompson. April went into Andrea Albert's office with Candice Herrington to discuss why Alexa put the PTO in for her. April acted in a way which forced Andrea to send her home from work early. (See Exhibit 4 – Candice Herrington's notes from the meeting on 2/12/2019 and the email exchange between Alexa, Candice and April regarding the request being submitted.) |
| February 15, 2019 | Andrea Albert and Tim Hassinger met with April Markiewicz regarding complaints she voiced on February 12, 2019 along with the continued issues with her not submitting PTO requests, not taking lunch breaks, language and gossiping. (See Exhibit 5 – Final Warning regarding the above issues) |

The various "disciplinary" reasons span more than one year before the actual termination date of June 2, 2019 and indicate that Mrs. Markiewicz was disciplined *once* about not clocking out when taking a lunch break on March 7, 2018, almost a year before termination. The memo indicates Mrs. Markiewicz was disciplined on November 14, 2018 for not working a full time schedule in 2018 and for taking unpaid leave, even though the evidence proves that Galloway knew Mrs. Markiewicz was taking off for serious medical conditions related to both herself and to her husband.[61]

---

[58] Exhibit 11-Galloway 000552
[59] Exhibit 11-Galloway 000552
[60] Exhibit 11-Galloway 000555
[61] On February 22, 2018, Mrs. Markiewicz emailed the HR Director that she was going to need intermittent leave

On February 15, 2019, Galloway forced Mrs. Markiewicz to sign a "final written warning" citing violations regarding failing to input PTO time (taking unpaid leave), not taking a 30 minute lunch and gossipping. These are different from the reason Ms. Albert gave for termination–taking lunch but not clocking off.[62] The final warning was not for "taking a lunch and not clocking off" but rather for not taking a lunch break at all.

"A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct." *Hague v. Univ. of Tex. Health Sci. Ctr.,* 560 F. App'x 328, 336-37 (5th Cir. 2014).*Id.* In *Hague* the termination reason given during a deposition was different from witness testimony. According to the plaintiff's testimony she was told that the non-renewal of her contract was "due to the budget cuts, we're going to have to let you go." *Hague v. Univ. of Tex. Health Sci. Ctr.,* 560 F. App'x 328, 336-37 (5th Cir. 2014). However, Dr. Villers testified he did not renew plaintiff's contract because he "needed a staff position of a higher category according to the HR for the school and that higher category would include a higher level of experience or education background." *Hague v. Univ. of Tex. Health Sci. Ctr.,* 560 F. App'x 328, 337 (5th Cir. 2014).

Here, two separate 30(b)(6) corporate witnesses gave differing grounds for termination, and Galloway provided different reasons to the unemployment office. The HR Director indicated a litany of reasons spanning almost a year before termination which included the need for Mrs. Markiewicz to work a full time schedule in 2019, and Ms. Albert, the supervising attorney, indicated she was terminated for taking lunch without clocking out. Based on these inconsistencies, pretext should be inferred.

---

due to her husband's cancer treatment and his surgery. The HR Director does not recall talking to Plaintiff about FMLA. Exhibit 6- 30b6 Depo 63:24-66:13;  Exhibit 5-Markiewicz Bates 000279-000280
[62] Exhibit 1-Markiewicz Depo 6/14/2021, 93:13-93:22; Exhibit 12-Galloway 000047-000048

## 2. FMLA Interference Claim

### a. Mrs. Markiewicz's termination is harm sufficient to support damages in an interference claim.

Galloway asserts that Mrs. Markiewicz has no damages resulting from the FMLA interference claim. At least two sister circuits have "recognized that employees can show that an employer interfered with their attempts to use FMLA leave by firing them," *Perkins v. Child Care Assocs.*, 751 F. App'x 469, 476 (5th Cir. 2018) (per curiam) (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009)); *see Lovland v. Emps. Mut. Cas. Co.*, 674 F.3d 806, 811 (8th Cir. 2012) ("[W]e have limited 'interference' claims . . . to situations where the employee proves that the employer denied a benefit to which she was entitled under the FMLA, which include terminating an employee while on FMLA leave.")

Mrs. Markiewicz was fired three weeks after returning from FMLA leave. Mrs. Markiewicz took FMLA from April 30, 2019 and returned from FMLA leave on May 10, 2019.[63] While Mrs. Markiewicz was on FMLA leave, Ms. Albert interviewed and ultimately hired someone to replace Mrs. Markiewicz on May 7, 2019.[64]

Prior to her termination, on May 13, 2019, Mrs. Markiewicz entered a calendar invitation, as she had done in the past, indicating that she needed leave for a doctor's appointment on May 16, 2019.[65] On May 30, 2019, her second to last day of work, Ms. Markiewicz sent calendar invitations giving notice of her requests for leave for carpal tunnel surgery on June 13-June 14, 2019, July 26, 2019, leave for her husband's post-op checkup on July 2-July 5, 2019.[66] Galloway should have known that cancer does not resolve itself with one surgery and that further treatment would inevitably be necessary.

---

[63] R. Doc. 40-9, pg. 53, Galloway 000199
[64] Exhibit 18-Galloway 00374
[65] Exhibit 20-Markiewicz Bates 00011; Exhibit 8-Segura 00072-00075;  Exhibit 19-Galloway 00018, Galloway 00027
[66] Exhibit 20-Markiewicz Bates 00005-00010;  Exhibit 9-Sessions 00012-00013

In *Perkins,* the court accepted the argument that a reasonable jury could find that plaintiff was fired to interfere with her use of FMLA *in the future. Perkins v. Child Care Assocs.*, 751 F. App'x 469, 476 (5th Cir. 2018). The court indicated that the employee must show that she gave the employer notice of her intention to take leave and that absent unusual circumstances the employee must follow the usual and customary requirement for requesting leave. *Perkins v. Child Care Assocs.*, 751 F. App'x 469, 476 (5th Cir. 2018). As borne out in discovery, Plaintiff regularly used calendar invites for leave requests.[67] Thus, she created the calendar invites for the leave requests and told the Employee Benefits Coordinator, Ms. Herrington, about the dates she needed for leave which were in June and July, 2019.[68] Mrs. Markiewicz was fired two days after she created the calendar invites.[69] The request for leave appeared on both Ms. Albert's and Doris Bobadilla's calendar along with calendars for individuals in her work group.[70]

Because Galloway fired Mrs. Markiewicz before she could take FMLA leave in the future, Mrs. Markiewicz is entitled to lost wages, benefits including the term life insurance that was canceled[71], liquidated damages and all other damages allowed under 29 USC § 2617(a)(1)(A)(i)(I) as set forth in the Amended Complaint[72].

3. **ADA Failure to Accommodate Claims**

a. **Continuing Violation Doctrine Applies and ADA claims are timely.**

Under the continuing violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Henson v.*

---

[67] Exhibit 20-Markiewicz Bates 00011; Exhibit 8-Segura 00072-00075; Exhibit 19-Galloway 00018-00019
[68] Exhibit 1-Markiewicz Depo 6/14/2021 40:15-40:20; Exhibit 20-Markiewicz Bates 00005-00010; Exhibit 9-Sessions 00012-00013
[69] Exhibit 21-Galloway 00072-00075
[70] Exhibit 1- Markiewicz Depo 6/14/2021 38:4-38:10
[71] Exhibit 7-Herrington Depo 11:10-11:13
[72] R. Doc. 6- Amended Complaint ¶116

*Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005)(citing *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002)). The Supreme Court has clarified, however, that *discrete discriminatory acts* are not actionable if time barred, even when they are related to acts complained of in timely filed charges. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002).

Galloway argues that all requests for accommodations that occurred prior to January 26, 2019 were mere reiterations of prior requests and time barred under *Profit v. Klein Indep. School Dist.,* 2015 WL 3866720 *9-10 (S.D. Tex., June 23, 2015). However, Galloway's reliance on *Profit* is misplaced because the requests for accommodations in *Profit* were **denied** by defendant, which resulted in a "discrete" act not subject to the continuing violation doctrine. *Profit v. Klein Indep. School Dist.,* 2015 WL 3866720 *9-10 (S.D. Tex., June 23, 2015).

There is no record evidence of any denials of Mrs. Markiewicz's various requests for accommodations. Galloway either failed to accommodate by ignoring her requests or failed to engage in the interactive process, but there was no discrete act by Galloway denying any of Mrs. Markewicz's requests as required in *Profit* to succeed against the continuing violation doctrine.

**b.  Facts supporting a continuing violation of failure to accommodate.**

Mrs. Markiewicz was permitted to contact either her supervising attorney or the office manager to request an accomodation.[73] In 2012, Galloway was aware that Mrs. Markiewicz suffered from neck issues and that she was hearing impaired. [74] Around October 2013, the office manager, Ms. Herrington, became aware that Mrs. Markiewicz had migraines which were triggered by factors such as lighting and allowed Mrs. Markiewicz to remove one light bulb from her workstation but would not allow her to remove all of the bulbs .[75]

---

[73]  Exhibit 6-30b6 Depo 29:4-29:25, 30:1-30:9
[74]  Exhibit 7-Herrington Depo 12:9-13:16;  14-15:17
[75] Exhibit 7-Herrington Depo 20;  23:18-24:1;  Exhibit 1-Markiewicz Depo 6/14/2021 167:1-167:18

On December 4, 2013, Mrs. Markiewicz presented Ms. Herrington with a doctor's note and verbally requested an accommodation for an ergonomic workstation and further accommodations for lighting due to her cervical issues and migraines.[76] Mrs. Markiewicz also requested to be put in a vacant office instead.[77] There was no discussion of the request by Ms. Herrington with Mrs. Markiewicz when there should have been an interactive process.[78]

During Mrs. Markiewicz's employment she suffered from migraines triggered by perfumes and scents. Mrs. Markiewicz asked the office manager to talk to the individual who was wearing perfume and the office manager told Mrs. Markiewicz to talk to the individual directly.[79] Mrs. Markiewicz also requested a space with a door to prevent scents and to accommodate her hearing loss.[80] In 2017-2018 Mrs. Markiewicz asked for a standing desk as well and was told by the office manager that she will look into it.[81]

On February 15, 2019, Mrs. Markiewicz presented Tim Hassinger, the managing attorney for the Mandeville office her December 4, 2013 doctor's note and again requested accommodation for an ergonomic workstation and lighting.[82] Tim Hassinger stated in the meeting that Galloway was not concerned with Mrs. Markiewicz migraines.[83] Mrs. Markiewicz also sent an email on February 15, 2019 to Ms. Herrington requesting that Holly Justison, the individual who was wearing perfume, try another scent because she was still wearing it that day and it was affecting her migraines but Ms. Herrington does not recall having a

[76] Exhibit 2-Markiewicz Depo 2/11/2022, 63:3-68:23; Exhibit 23- Markiewicz Bates 486-487;  Exhibit 7-Herrington Depo 21:9-23:8
[77] Exhibit 1-Markiewicz Depo 6/14/2021 167:12-167:18.
[78] Exhibit 6-30b6 Depo Allbert 153:13-153:21. Ms. Albert claims all the desks were ergonomic but did not discuss it with Plaintiff. 151:18-151:21;  Exhibit 1-Markiewicz Depo 6/14/2021 166:22-166:25;  Exhibit 2-Markiewicz Depo 2/11/2022 63:11-63:25.
[79]  Exhibit 2- Markiewicz Depo 2/11/2022, 74:4-74:25
[80]  Exhibit 1-Markiewicz Depo 6/14/2021 179:9-179:22
[81]  Exhibit 1-Markiewicz Depo 6/14/2021 192:19-194:13
[82]  Exhibit 2-Markiewicz Depo 2/11/2022, 69:2-70:3,  Exhibit 23- Markiewicz Bates 486-487
[83]  Exhibit 2-Markiewicz Depo 2/11/2022, 40:22-41:2

conversation with Mrs. Markiewicz about her request.[84]

Except for Mr. Hassinger's February 15, 2019 statement that Mrs. Markiewicz's requests for accommodations were not Galloway's concern, there is no record evidence of any denials or discrete actions by Galloway which had a "degree of permanence that should trigger an employee's awareness of and duty to assert her rights." *Hendrix*, 911 F.2d at 1103, *citing Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir. 1983). Ms. Herrington never denied the requests for accommodation, she failed to engage in the interactive process or ignored the request. On the other hand, Tim Hassinger effectively denied her request for accommodations due to her migraines and that claim was brought timely because it occurred after January 26, 2019 and is not a re-urging of prior *denied* claim.

Further, the EEOC's interpretive guidelines reinforce this directive, but also stress that the interactive process requires the input of the employee as well as the employer. *See* 29 C.F.R. Pt. 1630, App. § 1630.9 at 359 ("flexible, interactive process that involves both the employer and the qualified individual with a disability"). *See also Taylor v. Principal Finance Group, Inc.*, 93 F.3d [**13] 155, 165 (5th Cir.), *cert denied*, 519 U.S. 1029, 117 S. Ct. 586, 136 L. Ed. 2d 515 (1996) (duty to launch interactive process is triggered by request for an accommodation). The need for *bilateral* discussion arises because "each party holds information the other does not have or cannot easily obtain." *See Taylor v. Phoenixville School Dist.*, 174 F.3d 142, __, 1999 U.S. App. LEXIS 6067 (3rd Cir. 1999) (noting that employers will not always understand what the disabled employee is capable of and the employee will not always understand what accommodations are reasonably available).

Courts interpreting the interactive process requirement have held that when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably

---

[84] Exhibit 7-Herrington Depo -130:5-133:10  Exhibit 22-Markiewicz Bates 86-87

accommodate an employee, the employer violates the ADA. *See Taylor v. Phoenixville School Dist.*, 174 F.3d 142, (3rd Cir. 4/5/99); 1999 U.S. App. LEXIS 6067; *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996). (cited by *Loulseged v. Akzo Nobel Inc*., 178 F.3d 731, 735-36 (5th Cir. 1999)).   There was no discussion of the requests by Ms. Herrington with Mrs. Markiewicz after December 13, 2013.[85]  When Mrs. Markiewicz re-urged the request on February 15, 2019, there was still no interactive process regarding the requests in the doctor's notes.[86] Further, with respect to Mrs. Markiewicz's  emailed request that Holly Justinson change perfume scents,  Ms. Herrington does not recall having a conversation with Mrs. Markiewicz about that request.[87]

In sum, Mrs, Markiewicz's requests for an accommodation related to her work station from 2013 and re-urged in 2019, her request for a co-worker to refrain from using a particular scent, her request for a standing desk, and her request for an office with a door which she made several times throughout the years are part of the continuing violation doctrine because they are all connected to her disabilities set forth in the doctor's note namely, her  migraines and cervical pain.

### 4.  ADA Harassment Claims

Galloway argues that the harassment was not based on a disability and that it was not sufficiently severe or pervasive to state a claim. Plaintiff will focus on those two elements only.

### a.  Facts that prove the harassment was pervasive and about Plaintiff's disabilities.

On May 13, 2010, Mrs. Markiewicz informed Doris Bobadilla that she occasionally speaks loudly because she is deaf in her left ear and sent an apology for her "loudness."[88] In October 2013, the office manager and Doris Bobadilla, became aware that Mrs. Markiewicz had

---

[85]  Exhibit 6-30b6 Depo Allbert 153:13-153:21. Ms. Albert claims all the desks were ergonomic but did not discuss it with Plaintiff. 151:18-151:21;  Exhibit 1-Markiewicz Depo 6/14/2021 166:22-166:25
[86]  Exhibit 6-30b6 Depo Allbert 153:13-153:21
[87]  Exhibit 7-Herrington Depo -130:5-133:10;  Exhibit 22-Markiewicz Bates 86-87
[88]  Exhibit 24-Galloway 000300

migraines which were triggered by environmental factors such as lighting and allowed Mrs. Markiewicz to remove one light bulb from her workstation but Ms. Bobadilla would not allow her to remove all of the bulbs from her workstation which caused the lighting to flicker.[89]

Sometime in 2017, Ms. Markewicz was moved to a hallway area closer to Doris Bobadilla and Andrea Albert.[90] Upon moving she was told by Ms. Albert and Ms. Bobadilla that they had thought about her moving to the hallway area because she was so loud and how it was going to work.[91]

Prior to her move in 2017, Ms. Bobadilla would pound on Mrs. Markiewicz's wall and when she would walk past her she would indicating a "shhhhh" gestures even if Mrs. Markiewicz was on the phone with Ms. Bobadilla's clients.[92] Tim Hassinger, the managing attorney, would flicker her lights and Ms. Bobadilla would walk past her and make rude comments such as "wow how do the people sitting next to you see."[93] These behaviors were witnessed by a former legal assistant, Susan Klein who noticed that Ms. Bobadilla did not engage in these behaviors with anyone else but Mrs. Markiewicz.[94]

Starting on January 19, 2018 and continuing until November 1, 2018, Mrs. Markiewicz received several emails from Doris Bobadilla indicating that she was "too loud."[95] Ms. Bobadilla would tap on the counter and "shshhh" Mrs. Markiewicz.[96] Ms. Bobadilla would also make comments a handful of times stating some variation of "it's looking a little dark over here."[97]

---

[89] Exhibit 7-Herrington Depo 20; 23:18-24:1; Exhibit 1- Markiewicz Depo 6/14/2021 167:1-167:18
[90] Exhibit 1-Markiewicz Depo 6/14/2021 129:11-132:11; 153:18-154:11
[91] Exhibit 1-Markiewicz Depo 6/14/2021 179:17-179:25
[92] Exhibit 1-Markiewicz Depo 6/14/2021 178:8-178-18; Exhibit 26-Declaration of Sue Klein
[93] Exhibit 1-Markiewicz Depo 6/14/2021 178:19-179:2; Exhibit 26- Declaration of Sue Klein
[94] Exhibit 26- Declaration of Susan Klein
[95] Exhibit 25-Markiewicz Bates 000290, 000257, 000255, and 000172
[96] Exhibit 1-Markiewicz Depo 6/14/2021 181:15-182:2
[97] Exhibit 1-Markiewicz Depo 6/14/2021 191:16-191:19

These comments and actions affected Mrs. Markiewicz's work for Ms. Bobadilla. A month after the last email ordering Mrs. Markiewicz to lower her voice, she received an email from Mrs. Bobadilla advised her that she was making a few errors in her work and needed to focus more on the task at hand.[98] Ms. Bobadilla noticed that her work was being affected and continued to send emails about her voice level and offered no accommodation despite being an employment lawyer.[99]

### b. Galloway regarded the plaintiff as hearing imparied.

"A 'disability' under the ADA is defined as 'a physical or mental impairment that *substantially limits* one or more of the major life activities of [an] individual; a record of such impairment; or being regarded as having [*5] such an impairment'". *McInnis v. Alamo Cmty. Coll. Dist.,* 207 F.3d 276, 280 (5th Cir. 2000) (quoting 42 U.S.C. § 12102) (emphasis added). Hearing is a "major life activity". *E.g., Ivy v. Jones,* 192 F.3d 514, 516 (5th Cir. 1999). See *EEOC v. Bobrich Enters.,* 2009 U.S. App. LEXIS 4314, at *4-5 (5th Cir. Mar. 6, 2009). Under the ADA and amendments, a reasonable juror could find Mrs. Markiewicz was disabled and/or regarded as disabled under the ADA and amendments because both her supervising attorney, Doris Bobadilla and the office manager regarded her as having hearing loss and migraines.

### c. Galloway's actions are pervasive harassment.

Harassment need not be severe *and* pervasive to impose liability; one or the other will do. *Harvill v. Westward Communs., L.L.C.,* 433 F.3d 428, 435 (5th Cir. 2005). In determining whether an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including"the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

---

[98] Exhibit 25-Markiewicz Bates 000247
[99] Depo of Bobadilla- transcript not yet received.

whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

Courts have also considered whether the complained of conduct undermines the plaintiff's workplace competence. *Hockman v. Westward Commc'ns*, 407 F.3d 317, 326, 122 Fed. Appx. 734 (5th Cir. 2004) (citing *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998)). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (citing *Harris*, 510 U.S. at 21-22). *Harvill v. Westward Communs., L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).

Galloway's reliance upon *Shepherd v. Comptroller of Public Accounts*, is misplaced as the case did not discuss ADA harassment of a hearing-impaired person at all. *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871 at 874 (5th Cir. 1999). *Shepherd* was a sexual harassment complaint that discussed the frequency of comments made about Shepherd's thighs and nipples. *Id.*

Further Galloway's reliance on both the *Hester v. Van Chevrolet Co.*, 1998 U.S. Dist. LEXIS 3026, 1998 WL 118149, at *2 (N.D. Tex. Mar. 4, 1998) and *Reith v. TXU Corp.,* 2006 U.S. Dist. LEXIS 16813 (E.D. Tex. Apr. 4, 2006) cases are also misplaced as these cases are distinguishable. The comments complained of in those cases did not specifically relate in any way to the disability. In *Hester* the employee's contention that he was asked to make coffee, while possibly harassing, was not sufficiently linked to his disability, partial deafness. *Hester v. Van Chevrolet Co.*, 1998 U.S. Dist. LEXIS 3026, 1998 WL 118149, at *2 (N.D. Tex. Mar. 4, 1998). In *Reith* the employee complained of co-worker behavior such as taking out his lunch

early, pulling out a chair as he was trying to sit down and not being as productive as the employee. *Reith v. TXU Corp.,* 2006 U.S. Dist. LEXIS 16813 (E.D. Tex. Apr. 4, 2006)

In this case, the employee's contentions are that she was constantly told over several years that she was "too loud" by a supervisor which was a direct result of Mrs. Markiewicz's hearing loss as she explicitly stated to Ms. Bobadilla in an email in 2010. Further, the failure to accommodate claim relates to the harassment claim as Mrs. Markiewicz was continuously seeking to move offices so that the harassment could stop and her disability would be accommodated.[100] Mrs. Markiewicz found the harassment by her supervising attorney "obnoxious."[101]

Galloway argues that these were not connected to Mrs. Markiewicz's disability because other individuals were told they were too loud by Ms. Bobadilla but Galloway has provided no documentation similar to Mrs. Markiewicz's indicating anyone else was emailed that they were "too loud" nor does Galloway provide any indication of the frequency of the comments and whether Ms. Bobadilla also tapped the counter or banged on their walls. Thus, Mrs. Markiewicz can meet a prima facie case of pervasive harassment resulting from her hearing loss.

**5. Gender Harassment Claims**

Galloway argues that Mrs. Markiewicz's does not present a "perceived failure to conform to *traditional gender stereotypes"* and relies on *EEOC v. Boh Bros.Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013). However, Galloway fails to address Mrs. Markiewicz's testimony that Doris Bobadilla viewed her as a "loud, outspoken woman" as opposed to to the "little quiet demure ladies in the office" and that this gender stereotype caused Ms. Bobadilla and Ms. Albert to punish her by assigning her to a male attorney, John Getty, who had previously threatened to

---

[100]  Exhibit 1-Markiewicz Depo 6/14/2021 178:9-178:25
[101] Exhibit 1-Markiewicz Depo 6/14/2021 178:9-178:25

punch Mrs. Markiewicz in the past.[102] Mrs. Markiewicz complained about the threats to Ms. Bobadilla who then stated "well you must have done something to aggravate him."[103] Mrs. Markiewicz also points to "decades of comments and innuendos and comparisons" and believed that Doris Bobadilla was biased against her as a woman because she was "strong willed."[104]

The seminal case of *Price Waterhouse v. Hopkins* involved the general belief that women should be "meeker" than men. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). That is the traditional gender stereotype at odds in the case at hand, Mrs. Markiewicz's noncomforming to the "demure" stereotype espoused by Galloway which resulted in her reassignment to John Getty and put her in actual danger of receiving a battery. Thus, Mrs. Markiewicz has demonstrated the specific gender stereotypes and frequency of the harassment sufficient to present a cognizable claim for gender based harassment.


Dated: July 12, 2022                          Respectfully submitted,


                                   VASQUEZ LAW OFFICE

                                    */s/Jessica Vasquez*
                                    Jessica M. Vasquez (27124)
                                    400 Poydras St. Ste. 900
                                    New Orleans, LA 70130
                                    Telephone: (504) 571-9582
                                    Facsimile: (504) 684-1449
                                    Email: jvasquez@vasquezlawoffice.com
                                    *ATTORNEY FOR APRIL MARKIEWICZ*

---

[102] Exhibit 2-Markiewicz Depo 2/11/2022, 36:13-36:20;  37:2-38:3. Mr. Getty said to Plaintiff that he never wanted to punch a woman  in the face so bad until he met Mrs. Markiewicz. Exhibit 1-Markiewicz Depo 6/14/2021 116:9-116:12
[103] Exhibit 2-Markiewicz Depo 2/11/2022, 36:13-36:20; Exhibit 1-Markiewicz Depo 6/14/2021 117:16-117:23
[104] Exhibit 2-Markiewicz Depo 2/11/2022, 34:24-35:3; 37:9-37:10