UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

APRIL MARKIEWICZ                                CIVIL ACTION

VERSUS                                          NO: 20-805

GALLOWAY, JOHNSON, TOMPKINS,                    SECTION: "A" (4)
BURR, AND SMITH, APLC

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 40)** and a **Motion in Limine (Rec. Doc. 42)**, both filed by the defendant, Galloway, Johnson, Tompkins, Burr, and Smith, APLC. The plaintiff, April Markiewicz, opposes the motions. The motions, submitted for consideration on July 20, 2022 and August 3, 2022, are before the Court on the briefs without oral argument. For the reasons that follow, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART, and the motion in limine is GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND

Ms. April Markiewicz, the plaintiff herein (hereinafter "Markiewicz" or "Plaintiff"), has brought this action against her former employer, the Galloway, Johnson, Tompkins, Burr, and Smith law firm (hereinafter "Galloway"), alleging numerous violations of federal law. Markiewicz was employed by Galloway as a legal assistant from April 3, 2008, until her termination on June 2, 2019. Although by Markiewicz's own admission she had been threatened with termination for years leading up to her actual termination in 2019, (Rec. Doc. 6, Amended Complaint ¶¶ 25, 28), Markiewicz contends that Galloway ultimately terminated

her employment because she used FMLA[1] leave in May of 2019, and that Galloway's proffered non-leave-related reason for terminating her is a pretext for retaliation. Fueling Markiewicz's claim of retaliation is the fact that Galloway fired her just three weeks after she returned to work following her FMLA leave, which she had taken due to her husband's cancer treatment.

Markiewicz brings a second claim under the FMLA for interference with her right to take additional FMLA leave. Markiewicz contends that she had requested more FMLA leave following her return to work in May 2019, this time due to her own medical issues, but she was discharged and therefore not allowed to use the requested leave. Thus, the FMLA claims relate to Markiewicz's husband's cancer treatment, as well as her own numerous health conditions, and both claims (retaliation and interference) are tethered to the termination decision.[2]

As to her own numerous health issues, Markiewicz contends that they constituted disabilities for purposes of the ADA.[3] Markiewicz claims that while employed at Galloway she was harassed because of those disabilities and denied accommodations, all in violation of the ADA.

Finally, Markiewicz claims that she was subjected to gender-based harassment by her female supervisors while employed at the law firm, and that this harassment resulted in a

---

[1] Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

[2] As later explained in more detail, the interference claim described above is not the same interference claim that Markiewicz pleaded in her Amended Complaint, which was filed by her former attorney. In July 2021, Markiewicz's first attorney withdrew from the case and her current counsel enrolled to take over the representation. (Rec. Doc. 20, Order).

[3] Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

hostile work environment. Presumably, Markiewicz has brought this claim under Title VII, 42 U.S.C. § 2000e, *et seq.*[4]

Galloway now moves for judgment as a matter of law on all claims, and to exclude certain evidence at trial should the Court decline to grant its motion for summary judgment in its entirety.[5]

A jury trial had been scheduled to commence on September 19, 2022, but the Court continued the trial in light of a conflicting criminal matter. (Rec. Doc. 55, Order). The Court advised the parties that a trial date would be set if any part of the case survives the pending motion for summary judgment. (Rec. Doc. 56, Minute Entry).

The parties' contentions are addressed below.

## II.    DISCUSSION—MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the

---

[4] Neither the pleadings nor the opposition to the motion for summary judgment expressly refers to Title VII.

[5] Galloway explains that it filed its motion in limine out of an abundance of caution should the Court decline to dispose of the case in its entirety on summary judgment. Further, if the Court grants summary judgment on the ADA and Title VII claims in particular, Galloway posits that the challenged evidence would be especially irrelevant to the remaining FMLA claims.

moving party has initially shown "that there is an absence of evidence to support the non-

moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant

must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing

Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587

(1986)). Conclusional allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation do not adequately substitute for

specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097

(5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the

burden on the non-movant to designate the specific facts in the record that create genuine

issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d

1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in

search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d

1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.

1988)).

### A.    FMLA Claims

As outlined above, Markiewicz seeks relief under the FMLA based on two legal

theories, one for retaliation and one for interference. Both claims are grounded on her

termination from Galloway on June 2, 2019.

Under the FMLA, 29 U.S.C. § 2601, *et seq.*, eligible employees are guaranteed the

right to take "reasonable leave" for medical reasons, and for the care of a spouse who has a

"serious health condition." *Id.* § 2601(b)(2). An eligible employee shall be entitled to a total of

12 workweeks of leave during any 12-month period in order to care for a spouse with a

serious health condition, or because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. *Id.* § 2612(a)(1)(C), (D). Upon the employee's timely return to work following FMLA leave, the employer must restore the employee to the position of employment held by the employee when the leave commenced. *Id.* § 2614(a)(1)(A) (conferring the right to "job restoration").

The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by the FMLA, *id.* § 2615(a)(1), including the right to job restoration upon returning to work. The FMLA also makes it unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful under the FMLA. *Id.* § 2615(a)(2). Thus, an employer may neither interfere with an employee's efforts to use FMLA leave nor retaliate against or penalize an employee on account of an employee's exercise of FMLA rights. But importantly, the FMLA does not immunize an employee who is subject to termination for poor job performance—an employee may be validly terminated for non-FMLA reasons regardless of FMLA leave status or attempts to use FMLA leave.[6] *See Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1304 (5th Cir. 2022) (citing *Simpson v. Office of the Chief Judge*, 559 F.3d 706, 713 (7th Cir. 2009)).

The Court begins by addressing whether Markiewicz has a separate and distinct claim for FMLA interference or whether her sole recourse lies in FMLA retaliation, which is

---

[6] Furthermore, an employer may require the employee to use accrued paid vacation leave or medical leave for any part of the guaranteed 12-week period. 29 U.S.C. § 2612(d)(2)(A)-(B). The Court makes this point because Markiewicz has specifically criticized Galloway for at times charging her accrued PTO (paid time off) without her authorization when she missed work and for "pressuring" her to use PTO, (Amended Complaint ¶ 16), neither of which are actionable nor indicative of FMLA animus.

Galloway's position. As noted above, both of Markiewicz's FMLA claims are tethered to the termination decision although this is not how Markiewicz originally pleaded her case. The FMLA interference claim that Markiewicz pleaded when represented by her former counsel, assuming that Count 2 of the Amended Complaint is the interference claim (it is not expressly identified as such and the term "interference" is not used anywhere in the Amended Complaint), was based on the allegation that Galloway had failed to notify Markiewicz of her FMLA rights as required by federal law, presumably when she took significant amounts of leave in 2018. But this particular type of interference claim (failure to notify or counsel as to FMLA rights) requires proof of prejudice, *Carter v. St. Tammany Ph. Sch. Bd.*, No. 2130237, 2022 WL 485197, at *1 (5th Cir. Feb. 17, 2022) (citing *Cuellar v. Keppel Amfles, LLC*, 731 F.3d 342, 347 (5th Cir. 2013); *Bryant v. Tex. Dep't of Aging & Disab. Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)), and Galloway seized upon this failure in Markiewicz's evidence—nothing in the record suggests prejudice deriving from the failure to notify insofar as the leave taken in 2018 or in 2019 is concerned—when moving for summary judgment.[7]

---

[7] As to the 2018 absences and the alleged failure to notify, Galloway points out that there has been no showing that the time that Markiewicz was out of the office even qualified for FMLA leave with the exception of a day or two. It is clear from Markiewicz's deposition testimony that she cannot establish that the significant amount of time that she took off in 2018 would have qualified for FMLA leave. Markiewicz kept no log, no calendar, and could not even recall how many times the absences related to her husband's medical appointments. (Rec. Doc. 40-3, Markiewicz deposition at 60-62). She described the pertinent timeframe as a blur. (*Id.* at 46).

The record does contain an email dated March 9, 2018, from Markiewicz to two other office staffers in which she explains that in 2018 she and her husband would be able to fly free that year (an opportunity based on her grandfather's retirement from the airlines), and that she and her husband planned to take advantage of that opportunity to travel to see family. (Rec. Doc. 40-3 at 124, Exhibit A-6). In the email Markiewicz acknowledges that normally she would never take so much time off but she may never get free tickets again. (*Id.* at 125).

To be clear, Markiewicz was never denied leave in 2018. And the Court agrees with Galloway's contention that the FMLA does not protect Markiewicz's decision to take advantage

In her opposition, Markiewicz has attempted to pivot as to the basis for her interference claim now arguing that her interference claim is grounded on the fact that shortly before she was terminated in 2019 (after returning from FMLA leave due to her husband's illness), she requested *more* FMLA leave in order to address her own health issues, and that by terminating her Galloway "interfered" with her right to use FMLA leave. It is no surprise that Galloway has objected to Markiewicz's attempt to morph her interference claim in response to the motion for summary judgment and contends that this new interference claim, which turns on the validly of the termination itself, is simply a repackaged retaliation claim that would unfairly allow Markiewicz to prevail based on a reduced burden of proof. *See Cuellar*, 731 F.3d at 349 (Elrod, J., concurring) (observing that discriminatory intent is not an element of an interference claim). The Court agrees.

First, the Court is persuaded that it would be unfair to allow Markiewicz to recast her FMLA interference claim in response to Galloway's meritorious arguments regarding the interference claim actually pleaded. Given that Markiewicz cannot establish an essential element of her interference claim grounded on the failure to provide notice of FMLA rights, *i.e.*, prejudice, the motion for summary judgment will be granted as to the interference claim.

Second, even if Markiewicz had amended her pleadings to assert her new theory of FMLA interference, summary judgment would nonetheless be appropriate because in her particular case the retaliation claim and interference claim dovetail into one claim. The damage triggering event for both claims is the termination and the damages sought for both

---

of free airfare for herself and her husband to travel extensively, even if motivated by the desire to spend more time together in light of Mr. Markiewicz's diagnosis. And by 2019 Markiewicz had requested and was approved for FMLA leave so the alleged failure to notify/counsel resulted in no prejudice for that year.

claims are the same (wage loss, and benefit loss prospectively following the termination). And even though interference and retaliation generally constitute two separate and distinct legal theories under the FMLA, the overlapping of those theories in this case is obvious when one considers that the outcome of the two claims cannot differ. If the jury determines that Markiewicz was legitimately terminated for non-FMLA reasons then the retaliation claim fails as well as the interference claim. An interference claim depends on proof that the employer denied what the employee was *entitled* to under the FMLA but an employee who is legitimately terminated is not entitled to future FMLA leave.

Similarly, if Markiewicz prevails on her retaliation claim, meaning that she was not legitimately terminated for non-FMLA reasons, then she will prevail on her interference claim—yet she cannot recover her damages twice. In substance, Markiewicz's claims are that she was punished by termination for exercising her right to use FMLA leave (for her husband's illness) and *also* for attempting to exercise that right by taking *more* leave in the future. In other words, Markiewicz's retaliation claim encompasses both past and future FMLA leave. Her claim is one for retaliation and therefore Markiewicz cannot prevail without proving discriminatory intent. Allowing Markiewicz to change her interference claim at this juncture to ground it on the termination itself would essentially allow her to prevail on her retaliation claim by relieving her of the burden of proving discriminatory intent, which is simply not fair to Galloway given the advanced stage of this litigation.

The Court now turns to Markiewicz's FMLA retaliation claim.

In the absence of direct evidence of retaliatory intent, the familiar *McDonnell Douglas* burden-shifting framework applies to FMLA retaliation claims. *Park v. Direct Energy GP, LLC*, 832 Fed. Appx. 288, 295 (5th Cir. 2020). Under this framework, the plaintiff must first

establish a prima facie case of retaliation by showing that 1) she engaged in a protected activity, 2) the employer discharged her, and 3) there is a causal link between the protected activity and the discharge. *Id.* (citing *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020)). If the plaintiff makes a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reasons for its decision. *Id.* This burden is one of production, not persuasion, and it involves no credibility assessment. *Id.* (citing *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)).

Once the employer gives a legitimate reason, the burden shifts back to the plaintiff to prove that the employer's stated reason is a pretext for retaliation. *Id.* (citing *Amedee*, 953 F.3d at 835). To avoid summary judgment on the issue of pretext, the plaintiff must show that there is a "conflict in substantial evidence" on this issue. *Id.* (quoting *Musser*, 944 F.3d at 561). Evidence is substantial if it is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. *Id.* The ultimate determination in every case is whether viewing all of the evidence in the light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. *Owens*, 33 F.4th at 826 (citing *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)).

For purposes of its motion for summary judgment, Galloway assumes that Plaintiff presents a prima facie case of FMLA retaliation. (Rec. Doc. 40-1, Memorandum in Support at 9). Galloway's proffered non-retaliatory reason for terminating Markiewicz is that she violated the firm's written policy pertaining to mandatory clocking out for lunch breaks after she had specifically been reprimanded on at least one prior occasion for violating the policy. This constitutes a legitimate, non-discriminatory reason for discharge.[8]

---

[8] Markiewicz mischaracterizes the lunch break issue by suggesting that she was terminated for

The burden now shifts back to Markiewicz to show that there is a "conflict in substantial evidence" on the issue of whether Galloway's stated reason for discharge is a pretext for retaliation. Markiewicz may rely on circumstantial evidence, including evidence of disparate treatment or evidence tending to show that Galloway's explanation is "unworthy of credence." *Owens*, 33 F.4th at 826 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)). The evidence must be of a sufficient "nature, extent, and quality" to permit a jury to reasonably infer discrimination. *Id.* (citing *Crawford*, 234 F.3d at 903). If Markiewicz cannot do so then Galloway will be entitled to summary judgment on the FMLA retaliation claim.

Before examining the evidence cited in the record to determine whether there is a conflict in substantial evidence sufficient to defeat summary judgment, the Court first addresses a potentially determinative question of law that the parties dispute, *i.e.*, whether mixed-motive causation continues to apply in an FMLA retaliation case or whether the more stringent "but for" standard applies.

In *Richardson v. Medtronics International, Inc.*, 434 F.3d 327, 334 (5th Cir. 2005), the Fifth Circuit endorsed the mixed-motive framework in "appropriate" FMLA retaliation cases. Under the mixed-motive framework the plaintiff need not prove that discrimination was the sole reason for the discharge. *Id.* Rather, it would be sufficient to show that the exercise of FMLA rights was a motivating factor in the decision to terminate the employee. *Id.* at 335.

Galloway's position is that *Richardson* is no longer good law in light of the Supreme

---

working through her lunch break and therefore not taking a lunch break at all. But Galloway's position is that Markiewicz was in fact taking lunch breaks but that she was not clocking out for them—according to Galloway, Markiewicz had been observed away from her desk and eating in the kitchen on days when she had not clocked out for lunch.

Court's decisions in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), and *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), that eliminated the mixed-motive framework in ADEA and Title VII retaliation cases. Although *Richardson* dealt specifically with an FMLA retaliation claim, and those Supreme Court decisions did not, Galloway argues that *Richardson*'s reasoning has been destroyed, that the case has been implicitly overruled, and that the Court should hold Markiewicz to the more stringent "but for" causation standard.

Markiewicz's position is that until it is overruled by the Fifth Circuit, *Richardson* continues to be binding law in this circuit. Markiewicz also points out that most courts continue to apply the mixed-motive approach in FMLA retaliation cases following the *Gross* and *Nassar* decisions.

While Galloway's legal arguments are persuasive, the Court is persuaded that they are best left to the Fifth Circuit which thus far has expressly declined (more than once) to address the impact of *Gross* and *Nassar* on *Richardson*'s mixed-motive holding notwithstanding that those decisions are not recent. Undoubtedly, the Fifth Circuit has cast doubt on the continued viability of *Richardson*, but it has also cautioned against "blindly applying" *Gross* and *Nassar* to the FMLA, *Stanton v. Jarvis Christian Coll.*, No. 20-40581, 2022 WL 738617, at *5 (5th Cir. Mar. 11, 2022) (unpublished) (citing *Adams v. Mem'l Herman*, 973 F.3d 343, 353 (5th Cir. 2020)). Earlier this year in *Stanton*, the Fifth Circuit explained why grafting the holdings of *Gross* and *Nassar* onto the FMLA is not as simple as it may seem at first blush. *See Stanton*, 2022 WL 738617, at *6.

The Court is persuaded that it remains bound by *Richardson* and that the appropriate standard of causation that applies to Markiewicz's FMLA retaliation claim is the mixed-motive

causation standard.[9] Thus, the question is whether Markiewicz has demonstrated that there is a "conflict in substantial evidence" on the issue of whether Galloway's proffered reason for the termination—even if true—is but one of the reasons for the termination, another of which was discrimination; in other words, was Markiewicz's use of FMLA leave (and her request for more leave) a motivating factor in the decision to terminate her.[10] *Richardson*, 434 F.3d at 333 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

It is undisputed that the termination decision was made by Andrea Albert, one of the law firm's shareholders and Markiewicz's direct supervisor. At Galloway, legal assistants like Markiewicz are supervised by the attorneys for whom they work. (Rec. Doc. 40-4, 30(b)(6) deposition at 190). Albert explained that she decided to terminate Markiewicz because of a continuing problem with insubordination and failure to adhere to firm rules that Markiewicz had previously been counseled on. (*Id.* at 142). Albert explained that Markiewicz would take lunch and not clock out, and that this problem went all the way back to February of 2018.

---

[9] If the Court rules against Galloway on the legal question of whether mixed-motive continues to apply then Galloway contends that the Court should nonetheless apply the but for causation standard because Markiewicz has never conceded that Galloway had any legitimate reasons to discharge her. (Rec. Doc. 40-1, Memorandum in Support at 11). The Court notes the language from *Richardson*, 434 F.3d at 333, that has been quoted in subsequent cases stating that the mixed-motive framework applies where the employee *concedes* that discrimination was not the *sole* reason for the discharge. *See, e.g., Adams*, 973 F.3d at 353 n.11. The Court does not interpret this language as requiring a factual stipulation by the employee to the effect that her former employer had grounds to terminate her. Rather, the Court is persuaded that an "appropriate" case for the mixed-motive framework is one in which there is *evidence* that both permissible and impermissible motives played a part in the challenged employment decision. *See Stanton*, 2022 WL 738617, at *4 (citing *Richardson*, 434 F.3d at 332-33; *Adams*, 973 F.3d at 353-54).

[10] If Markiewicz proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus. *Richardson*, 434 F.3d at 333 (citing *Rachid*, 376 F.3d at 312). If Markiewicz creates an issue of fact as to the mixed-motive question then summary judgment must be denied, and the pretext question decided by the jury.

(*Id.*). Albert explained that in her opinion an employee who was repeatedly instructed with regard to a firm rule—in particular, taking lunch every day and not clocking out when doing it—was insubordinate. (*Id.* at 144-145). Albert denied that Markiewicz had ever been asked or required to work through lunch. (*Id.* at 144).

Again, according to Galloway the issue with Markiewicz not clocking out for lunch was first noted in early 2018, and Markiewicz's personnel file contains evidence that clearly supports this contention. Albert explained that she observed in early 2018 that Markiewicz had been arriving late for work on a regular basis but not staying past 5:00 p.m. (*Id.* at 171). She began to question whether Markiewicz was actually working the required 40 hours per week. This prompted Albert to ask Officer Manager Candace Herrington-Loup to review Markiewicz's time records. (*Id.* at 172). The review showed not only that Markiewicz had not been working 8 hours per day but also that she had not been clocking out for lunch (for over a year) even though Markiewicz was regularly observed in the kitchen eating lunch. (*Id.*).

A "Written Warning" dated March 7, 2018, and signed by both Albert and Markiewicz, memorializes a discussion that Albert had with Markiewicz on that date regarding her tardiness and failure to clock out for lunch. (Rec. Doc. 40-3 at 96, Exhibit A-3). The document advises that any further violation of the policies discussed is grounds for disciplinary action including immediate termination. (*Id.* at 97). According to both Albert and Candace Herrington-Loup, the personnel/office manager who was present at the meeting, Markiewicz had no explanation for the infractions. (*Id.* at 183; Rec. Doc. 40-8, Herrington-Loup deposition at 65). On the same day an email was sent to all paralegals, legal assistants, and file clerks reminding them about the firm's policy regarding tardiness and clocking out for lunch. (Rec. Doc. 40-8 at 17, Herrington email). Markiewicz began arriving

on time and clocking out for lunch daily after the March 7, 2018 written reprimand.

Although the foregoing events did not directly lead to Markiewicz's termination, they do form the backdrop for what came later. According to Albert events that took place relatively early in 2019 persuaded her that Markiewicz should be terminated. According to Albert, on February 12, 2019, Markiewicz stormed into Albert's office screaming and crying, standing over her desk, pointing her finger, and refusing to leave Albert's office when asked to do so. (Rec. Doc. 40-4, 30(b)(6) deposition at 229-30). Markiewicz said inappropriate things during what Albert characterized as a "verbal assault." (*Id.* at 229). Albert did discern that Markiewicz was upset about an issue with PTO or vacation and therefore called Herrington-Loup into the office with her. (*Id.* at 236). Albert had to walk Markiewicz out in order to remove her from her office; she sent her home for the rest of the day to cool off, and scheduled a follow-up meeting for Friday of that week.[11] (*Id.* at 230).

At the February 15, 2019 meeting, which was the Friday after the verbal assault and the scheduled follow-up to that encounter, Albert (Tim Hassinger also attended the meeting) explained that conduct like what Markiewicz had exhibited in her office earlier in the week (including the use of inappropriate language and disparagement of co-workers (characterized as gossiping)) would not be tolerated. (*Id.* at 249). Markiewicz was counseled about PTO and lunch breaks once again. This meeting resulted in a final written warning to

---

[11] On February 12, 2019, the day that Markiewicz was sent home for the verbal assault on Albert, Markiewicz responded to an email from Herrington-Loup regarding the failure to account for her time on January 28, 2019, when she was absent from work but had not put a leave request into the system. (Rec. Doc. 40-3 at 127, Exhibit A-10). Markiewicz acknowledged that a day of PTO was put into the system on her behalf and thanked the staff person who had done it for her. (*Id.*).
      Exhibit 37 to Herrington's deposition is a memorialization of what took place on February 12, 2019. (Rec. Doc. 40-8 at 25, Exhibit D-D).

Markiewicz regarding use of PTO, mandatory lunch breaks, language, and gossiping, with a warning that any violation of the policies relating to those items could result in immediate separation of employment. (Rec. Doc. 40-4 at 38, Exhibit 45). The final warning was signed by both Albert and Markiewicz.

Although Markiewicz was not terminated until June 2, 2019, Albert testified that she made the termination decision with respect to Markiewicz at the end of February 2019. (*Id.* at 262). Albert explained how she came to that decision—Albert learned while she was out of town in February, which was the very next week following the final warning meeting, that Markiewicz had again taken a lunch break without clocking out.[12] Albert considered this to be insubordinate conduct in light of the prior warnings regarding lunch breaks, and given Markiewicz's untenable behavior during the February 12th confrontation, Albert decided that Markiewicz should be terminated. (*Id.* at 263). Albert asked Herrington-Loup to be on the lookout for promising resumes so that Markiewicz could be replaced. (*Id.* at 263). A candidate was interviewed on May 3, 2019, she was hired to replace Markiewicz on May 6, 2019, and her start date was scheduled for June 5, 2019. (Rec. Doc. 40-4 at 44, Exhibit B).

If Albert's testimony as to when she made the termination decision is credited then Markiewicz's FMLA claim fails because it would mean that the termination decision was made *before* Markiewicz requested or took any FMLA leave, and therefore FMLA leave (past and future) could have played no role in the termination decision. Herrington-Loup did testify that "at the time *they* made the decision to terminate April, *they* also said, 'We're not going to do it prior to [her husband's] surgery. We're going to let her get through that.'" (Rec. Doc. 40-

---

[12] In fact, the time and attendance report confirms that this occurred three times after the February 15th final warning: February 19, 20, and 22. (Rec. Doc. 40-9 at 51, Exhibit E-3).

8, Herrington deposition at 139). Herrington believed that it was Albert who had said that to her. (*Id.*). Other than this lukewarm statement, the record contains no evidence to corroborate Albert's contention that she made the termination decision months before it was actually executed. The Court agrees with Markiewicz's contention that it would exceed the Court's permissible role on summary judgment to credit Albert's decision-making timeline—that determination falls within the province of the jury.

Given that Galloway has only Albert's testimony to establish that the termination decision predated the use of any FMLA leave or the request for more leave, testimony that the jury could decline to credit, Markiewicz stresses the timeline of the events proximate to her discharge, including the fact that she was discharged a mere three weeks after returning to work from FMLA leave and shortly after requesting more FMLA leave. Markiewicz contends that the timing is so suspicious as to render Albert's explanation as incredible. And even if the discharge decision was made in February 2019, Markiewicz contends that the decision would have to have been made very shortly after she requested FMLA leave on February 13, 2019, when Markiewicz requested FMLA leave for her husband's surgery in May. (Rec. Doc. 43-16, Exhibit 14). It was only two days later that the February 15, 2019 final warning meeting with Tim Hassinger took place. On May 1, 2019, Markiewicz's husband underwent cancer surgery. Markiewicz took FMLA leave on April 25 and 26 to attend a medical appointment with him. Markiewicz took FMLA leave from April 30 through May 9 in conjunction with the surgery and recovery. Markiewicz returned to work on May 10, 2019.

On May 30, 2019, Markiewicz put in a request for leave via calendar invites to have carpal tunnel surgery for herself in June, and leave based on her husband's condition in July. (Rec. Doc. 43-22, Exhibit 20). She was discharged on June 2, 2019, which was three weeks

after her return.

In a retaliatory discharge case, the plaintiff may rely on temporal proximity between protected activity and an adverse employment action only if the two are "very close" in time. *Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Sufficiency of "closeness" is not governed by bright line rules because a time span that suffices in a case with other circumstantial evidence of retaliation may not suffice when the plaintiff has no other evidence of retaliation. *See Feist*, 730 F.3d at 454-55 (citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). Courts in this circuit weigh temporal proximity as part of "the entire calculation" of whether the employee has shown a causal connection between the protected activity and the adverse employment action. *Hague v. Univ. of Tex. Health Science Ctr.*, 560 Fed. Appx. 328, 334 n.7 (5th Cir. 2014) (unpublished) (quoting *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)).

But temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 487 (5th Cir. 2008) (citing *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir.2007)); *see Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 620 (5th Cir. 2020). If an employee attempts to rely only on temporal proximity to show causation, the timing must be "very close." *Perkins v. Child Care Assocs.*, 751 F. App'x 469, 474 (5th Cir. 2018) (citing *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013)). An interval of weeks between protected activity and termination is "certainly close timing." *Owens v. Circassia Pharm., Inc.,* 33 F.4th 814, 835 (5th Cir. 2022).

The timing of Markiewicz's termination in relation to her return to work following FMLA

leave (3 weeks) and her request to take additional FMLA leave (3 days) is certainly very close although maybe not so close as to survive summary judgment based on temporal proximity alone. It certainly is not as close as the plaintiff in *Badgerow v. REJ Properties, Inc.*, *supra*, where the termination occurred "in the immediate aftermath" of the decisionmaker being informed about the protected activity. Even in that case the Fifth Circuit discussed the plaintiff's other significant evidence of pretext that combined with her reliance on such "very close" temporal proximity made summary judgment on her retaliation claim inappropriate. *Badgerow,* 974 F.3d at 620.

In order to survive summary judgment, Markiewicz's approach is to combine "suspicious timing" or temporal proximity with what she contends constitutes other significant evidence of pretext. *See Owens,* 33 F.4th at 835. Markiewicz advances several categories of evidence that she contends demonstrate pretext, most of which are not helpful to her. For example, Markiewicz's arguments surrounding the leave that she took in 2018 do not help to establish pretext for her termination because Markiewicz has not established that the leave that she took in 2018 was FMLA eligible. As the Court has already pointed out, Markiewicz could recall next to nothing about the days that she took off in 2018 much less that any given day would have been eligible for FMLA status. Galloway identified a couple of days that would have qualified—days for which Markiewicz was <u>not</u> denied leave—but Markiewicz's seems to assume that every day she sought leave following her husband's cancer diagnosis in 2017 implicated the FMLA.[13] Thus, the Court sees no significance vis à vis the termination to the fact that no one offered Markiewicz the opportunity to take FMLA leave in 2018.

---

[13] Markiewicz does something similar by putting the medical records for her and her husband into the record to establish FMLA leave eligibility in 2018. Again, whether some of the days in 2018 would have been FMLA eligible is not disputed.

But even if Markiewicz could recall what she was doing in 2018 and establish FMLA eligibility for the time that she was out, she fails to link this to any animus on Albert's part, which is essential because Albert is the shareholder who made the termination decision on behalf of Galloway. Meanwhile, Markiewicz has pointed out that it was the HR director who knew about her situation in 2018 and failed to suggest that FMLA leave might be appropriate. As explained below, Albert was unhappy with all of the time that Markiewicz had been out in 2018 but whether or not the time out could have qualified for FMLA leave status is not probative of retaliation.

Next, Markiewicz goes too far in contending that she was "disciplined" near the end of 2018 when she was counseled about the possibility of losing eligibility for health insurance benefits if she did not bring her hours up in the first quarter of 2019. To say that she was disciplined is simply a mischaracterization. But again, this argument loses any weight given that Markiewicz has not demonstrated that all of the leave that she took in 2018, which included time off to take advantage of the free air fare passes for her and her husband to travel extensively, was even FMLA eligible.

In sum, any issues surrounding the 2018 leave are non-issues insofar as FMLA pretext and retaliation are concerned.

Another unconvincing argument that Markiewicz makes is that the evidence in this case presents a situation of shifting explanations as to why she was terminated, and that this is indicative of pretext. In particular, Markiewicz contends that while Albert tied the termination decision to the failure to clock out when taking lunch breaks, in the explanation that Galloway sent to the Louisiana Workforce Commission to oppose unemployment benefits, several reasons were noted, and that pretext can be inferred on this basis.

Evidence of "inconsistent explanations and the absence of clear criteria" in an employer's decision-making can be enough to survive summary judgment if, under the facts of a particular case, that inconsistency and lack of criteria could lead to a reasonable inference of pretext. *Owens*, 33 F.4th at 830-31 (citing *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 528 (5th Cir. 2022)).

But in Markiewicz's case the Court finds no merit to the contention that Galloway's additional supporting reasons for terminating her somehow undermine or call into question the specific reasons that Albert offered for the decision that she made to terminate Markiewicz. Even if one were to conclude that the proffered reason for the termination is false, it is not *ipso facto* discriminatory—it may or may not be so. *See Owens*, 33 F.4th at 826. The evidence of falsity must be of a sufficient "nature, extent, and quality" to allow the jury to make the inferential leap to discrimination a rational one. *Id.* at 826 n.7 (citing *Reeves*, 530 U.S. at 147). The Court sees no merit to the contention regarding shifting explanations for the termination.

Next, in order to bolster her case Markiewicz points to other employees that she believes would be comparators, *i.e.*, employees who also failed to clock out for lunch but were not terminated. To show disparate treatment, Markiewicz must produce evidence that they constituted "similarly situated" employees. *Owens*, 33 F.4th at 827 (quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001)).

Markiewicz has not demonstrated that these (former) employees are appropriate comparators, which is her burden—it is not Galloway's burden to refute her unsupported contention of comparator status. The other employees may share the same job title but the most important and fatal distinguishing factor as to these employees is that none of them

reported to Albert. Albert made the termination decision in this case and no one has

suggested that Galloway would have terminated Markiewicz absent Albert's decision to do

so. In other words, maybe another shareholder would have tolerated Markiewicz's conduct

just as apparently the conduct of the so-called comparators was tolerated. Of course,

Galloway correctly points out that Markiewicz's infractions as to the lunch breaks were more

egregious than the other former employees who purport to be comparators.

Finally, Markiewicz points to comments made by Albert that may suggest animus.

Exhibit 37 to Herrington's deposition is a memorialization of what took place on February 12,

2019, the day of the verbal assault. (Rec. Doc. 40-8 at 25, Exhibit D-D). That document

refers to a comment that Albert made at the time in which she said that she had gone 4

months without a legal assistant last year [2018] and "that it wasn't happening again this

year. She reminded April that they talked about this at the end of last year and agreed it

wouldn't happen again this year." (*Id.*). Markiewicz contends that this comment suggests that

Albert terminated her because she was planning to take time off in 2019—in other words,

FMLA leave—and that if she had not already taken leave and then requested more leave

Albert would not have terminated her. Markiewicz also claims that Albert told her, albeit

incorrectly (Markiewicz characterizes it as a material misrepresentation), that if she took

FMLA leave she would lose her health insurance benefits.[14]

The Court does not find it particularly significant to engage in the academic exercise

of determining whether the remarks, which for purposes of summary judgment are accepted

---

[14] It is unclear when Albert made this last statement to Markiewicz. The citations that Markiewicz
provided for the comment were for her own email in which she claimed that Albert made the
statement and the excerpt of the 30(b)(6) deposition where Albert acknowledged that the
statement is incorrect. (Citations to record in footnote 35 of Markiewicz's Opposition). It is not
clear that Albert agrees that she made the statement.

as having occurred, (Rec. Doc. 49, Reply at 6 n.17), are better classified as direct or circumstantial evidence of pretext. The remarks are significant because they were made by the individual who not only had authority to make the termination decision but who actually made it in this case. And if Albert's testimony is credited regarding when she actually made the decision to terminate Markiewicz, then the remarks were made proximate in time to the termination decision. The remarks clearly evince Albert's displeasure with Markiewicz's significant leave in 2018 and her concern that it could happen again in 2019. As Galloway points out, the comments are not necessarily probative of anything other than Albert's dissatisfaction with Markiewicz's numerous vacations (non-FMLA) and tardiness, as opposed to her FMLA protected absences. But the Court is persuaded that the significance of the remarks insofar as the FMLA retaliation claim is concerned must be determined by the jury. Given the very close timing between the termination and the protected FMLA activity in this case, and in light of the leave-antagonistic comments made by the decision-maker, a reasonable fact finder could infer that Galloway's proffered reason for Markiewicz's firing was pretext for unlawful retaliation.

The Court is persuaded that Markiewicz has demonstrated that there is a "conflict in substantial evidence" sufficient to avoid summary judgment on the issue of pretext. Assuming that the jury infers discriminatory animus in this case, it will be Galloway's burden to prove that it would have taken the same action despite the discriminatory animus.[15]

---

[15] Galloway has argued that intervening misconduct occurred to interrupt Markiewicz's timeline so as to negate the causation inference created by timing and temporal proximity, specifically the verbal assault on February 12, 2019, and Markiewicz's conduct (more lunch violations) in the aftermath of the February 15, 2019 final warning meeting when Hassinger was present. (Rec. Doc. 40-9 at 51, Exhibit E-3). The Court is persuaded that the fact-finder and not the Court should determine whether intervening misconduct dispels the inference of causation in Markiewicz's timeline of events.

For the foregoing reasons, Galloway's motion for summary judgment is GRANTED as to the FMLA interference claim and DENIED as to the FMLA retaliation claim.

**B.    ADA Claims**

As outlined above, Markiewicz seeks relief under the ADA based on two legal theories, one for failure to accommodate and one for disability-based harassment. The ADA claims are related to several ailments that Markiewicz claims to have: hearing loss, migraine headaches, carpel tunnel syndrome, and cervical disc issues.

For purposes of summary judgment only, the Court assumes that these ailments qualify under the ADA as disabilities.[16] A common element to both claims is that the plaintiff be "disabled." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir. 2003).

### 1.    *Failure to Accommodate*

The ADA (Americans with Disabilities Act) prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). The Act defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The statute also allows for suits by plaintiffs who though not actually disabled per the definition are "regarded as having such an impairment." *Id.* § 12102(1)(C).

Discrimination includes "not making reasonable accommodations to the known

---

[16] Galloway points out for instance that Markiewicz's hearing loss is not even medically documented. The Court does not interpret Galloway's failure to question disability status as part of its summary judgment motion as a concession as to disability status. In fact, Galloway expressly advised that it disputed many of the facts upon which the ADA claims were based but accepted them as true for summary judgment purposes only. (Rec. Doc. 40-1, Memorandum in Support at 16 n.90).

physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (citing § 12112(b)(5)(A)). "Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Thompson v. Microsoft Corp.,* 2 F.4th 460, 467 (5th Cir. 2021) (citing *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017)).

An ADA failure to accommodate claim does not require proof of an adverse employment action; a failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question *has not* suffered an adverse employment action. *LHC Grp., Inc.*, 773 F.3d at 703 n.6.

Galloway's sole pre-trial summary judgment challenge to the failure to accommodate claims is that they are time-barred.

The ADA requires that a plaintiff exhaust her administrative remedies with the EEOC before pursuing claims in federal court. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788 (5th Cir. 1996) (noting the ADA's incorporation of the exhaustion procedures applicable to Title VII claims). An ADA claim that has not been properly exhausted will be dismissed. *Id.* In Louisiana, in order to exhaust an ADA claim the plaintiff must file her charge of discrimination within 300 days after the alleged act of discrimination has occurred. *Windhauser v. Board of Supv. for La. State Univ.*, 360 Fed. Appx. 562, 566 (5th Cir. 2010).

Markiewicz filed her EEOC charge on November 19, 2019. Therefore, any alleged acts of discrimination that occurred *before* January 26, 2019 (the parties do not dispute that this is the operative date) are time-barred and must be dismissed. It is undisputed that as to every ailment that Markiewicz bases her failure to accommodate claims on, the accommodation that she requested was *first* made well-before January 26, 2019, and in some cases many years before that date. Markiewicz did not receive the accommodations that she requested. But she contends that she did not receive *explicit* denials of her accommodation requests either.

In fact, according to Markiewicz the only outright or explicit "denial" that she ever received as to her numerous accommodation requests was at the February 15, 2019 meeting, when Markiewicz attempted to show Tim Hassinger and Albert a doctor's note from 2013 that references her migraines and cervical issues (diagnosed in 2011 or 2012).That note states that Markiewicz should have dimmed lighting and an ergonometric workstation. (Rec. Doc. 43-25, Exhibit 23). In response to this note, which had previously been sent to Herrington-Loup on December 4, 2013, Hassinger told Markiewicz that Galloway was not concerned about her migraines.

To be sure, a claim for failure to accommodate will accrue when a request for an accommodation is *first* denied and therefore will start the running of the 300-day charge-filing period. Subsequent denials of a re-urged request will not initiate a new 300-day charge-filing period. Markiewicz correctly recognizes, however, that the trigger for the statute of limitations is not necessarily an explicit denial but rather a discrete act by the employer which has a "degree of permanence" sufficient to trigger an employee's awareness of her injury in order to assert her rights. (Rec. Doc. 43, Opposition at 19). Obviously, an unequivocal "no" or

"denial" will suffice as such a discrete act.

Markiewicz points out, however, that until Hassinger's negative comment on February 15, 2019, there were no *discrete* acts by Galloway sufficient to put her on notice that her requests had been denied and thereby trigger the running of the 300-day period. According to Markiewicz, Galloway's approach was simply to ignore her requests or put her off by telling her that someone would look into it but no one ever did. Thus, as to the accommodations requested via the 2013 doctor's note, Markiewicz contends that the 300-day charge-filing period did not start to run until February 15, 2019, which by her reasoning would render her failure to accommodate claim for dimmed lighting and an ergonometric workstation (related to the claimed disabilities of migraines and cervical issues) timely. As to her other requests (those not part of the 2013 doctor's note), Markiewicz contends that they are likewise not time-barred again due to the absence of any discrete acts by Galloway (denials) during her employment to start the running of the 300-day window. Markiewicz also contends that those requests relate to the requests raised in the 2013 doctor's note, and that the continuing violation doctrine should be applied in order to allow her to escape any problems with timeliness.

It is undisputed that by presenting the 2013 doctor's note to Hassinger and Albert, Markiewicz was actually re-urging the same accommodations request that she had made to Herrington-Loup in 2013. If the failure to accommodate claim associated with this re-urged request was already time-barred on February 15, 2019, then Hassinger's denial on that date would not start a new 300-day window so as to revive the claim.

According to Markiewicz, it was around October 2013 when Herrington-Loup, the office manager, became aware that Markiewicz had migraines and that they were triggered

by factors such as lighting. Markiewicz was allowed to remove one light bulb from her workstation (this about a month after the formal request in 2013) but was not allowed to remove all of the bulbs. In fact, Markiewicz was firmly told that she could do no more than remove one bulb. So as early as 2013, Markiewicz knew that Galloway was not going to accommodate her any further as to lighting issues. (Rec. Doc. 167, Markiewicz Deposition at 167). In this same timeframe , Markiewicz had also asked for the accommodation of having a private office because her cubicle workstation did not allow her to control the lighting as necessary or to have an ergonometric workstation. This suggestion was rebuffed by Herrington-Loup based on Markiewicz's job position (non-attorney) but Markiewicz later observed other non-attorney staff persons receive an office. Markiewicz testified that "[a]t every opportunity, they refused me to have the accommodations that my doctor asked for." (Rec. Doc. 40-3, Markiewicz deposition at 172). Markiewicz knew after three years had passed that Galloway was not going to grant her requests. (*Id.* at 153). Thus, for six years, until she was ultimately terminated for non-disability-related reasons, the lighting accommodation that Galloway had allowed for migraines was for Markiewicz to take out one bulb in her workstation, which she found to be inadequate. Markiewicz's request for a standing desk was made in 2017 or 2018 and was met with a firm "no" response. (*Id.* at 192, 194).

The Court is persuaded that the failure to accommodate claims based on the lighting, ergonometric workstation (including the standing desk), private office (re-urged several times over the years), are all time-barred. It was well before January 26, 2019, that Markiewicz had asked to do more than remove a single lightbulb from her workstation and had been told no. As to the standing desk, she was explicitly denied this request. When Markiewicz watched

other non-attorney staff receive offices it became evident that Galloway would not allow her the accommodation of a private office, which in essence was a denial. The same holds true for accommodations as to an ergonometric workstation. Markiewicz even relented and bought her own ergonometric chair because she knew that Galloway was not going to grant her requests.

Another accommodation for migraines that Markiewicz had requested was to have the other employees cease spraying/wearing perfume in the office because she believed that this aggravated her condition. This was a re-urged request that Markiewicz raised with Herrington on February 15, 2019. Herrington-Loup responded that she had spoken to the employees involved but that they had denied spraying anything. (Rec. Doc . 43-44, Exhibit 22). Several months earlier Markiewicz had asked Herrington-Loup to speak to some of the offending employees about it but Herrington told Markiewicz to handle it herself. (Rec. Doc. 40-3, Markiewicz deposition at 172-73). Being told to handle it yourself would seem a rather discrete act indicative of a denial.

Markiewicz's reliance on the continuing violation doctrine is misplaced. The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more which falls within the limitations period. *Windhauser*, 360 Fed. Appx. at 566 (citing *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997)). But discrete discriminatory acts are not actionable if time barred, even when they are related to acts complained of in timely filed charges. *Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. App'x 387, 391 (5th Cir. 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002)).

The only act that occurred within the 300-day window was Hassinger's comment at

the February 15, 2019 meeting. But the continuing violation doctrine does not operate to revive already time-barred claims which is precisely what Markiewicz is trying to do. The continuing violation doctrine also does not operate to hold a cause of action open indefinitely when an employee continues working after an accommodation has been denied and the employee simply continues to feel the continuing effect of the denial.

Markiewicz had notice well before the February 15, 2019 meeting of the actions (including omissions) that would have supported her failure to accommodate claim, whether those actions involved simply ignoring her requests without engaging in the interactive process, granting similar requested accommodations to other employees but not to her, or in some instances just telling her no. Markiewicz's claims are time-barred.

Galloway's motion for summary judgment is GRANTED as to the ADA failure to accommodate claims.

### 2. Harassment

Markiewicz's ADA harassment claim is based solely on hearing loss and migraine headaches. The claim does not involve carpel tunnel syndrome or cervical disc issues.

A cause of action for disability-based harassment is "modeled after the similar claim under Title VII." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (citing *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 563 (5th Cir.1998)). To establish a hostile-work-environment claim under the ADA, the plaintiff must show that: (1) she belongs to a protected group, (2) was subject to unwelcome harassment (3) based on her disability, (4) which affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470–71 (5th Cir. 2021) (citing *Flowers*,

247 F.3d at 235-36). The "harassment" upon which the claim is based must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment. *Id.* (citing *Flowers*, 247 F.3d at 236). In determining whether harassment is sufficiently pervasive or severe, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Thompson,* 2 F.4th at 471 (quoting *Patton v. Jacobs Eng'r Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017)). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not suffice to alter the terms and conditions of employment. *Id.* In other words, the legal standard for workplace harassment in this circuit is high. *Gowesky*, 321 F.3d at 509.

Regarding hearing loss as a claimed disability, Markiewicz contends that she was harassed primarily by shareholder Doris Bobadilla. Markiewicz informed Bobadilla via email in May 2010 that she was deaf in her left ear, had been since childhood, and that sometimes it caused her to speak in a loud voice.[17] (Rec. Doc. 43-26, Exhibit 24). Markiewicz complains that sometime in 2017, when she was moved to an area near Bobadilla and Albert, they both made comments questioning how the move was going to work out because Markiewicz was so loud. (Rec. Doc. 43-3, Markiewicz deposition at 179). Bobadilla would at times pound on

---

[17] Markiewicz sent the email to Bobadilla as an apology for her loud tone because Bobadilla had been at Markiewicz's desk earlier in the day while Markiewicz was on the phone. The email does not indicate what Bobadilla said or did while at Markiewicz's desk to indicate her concern with Markiewicz's voice volume but Bobadilla responded to the email as follows: "April: No need to apologize; ***I just wanted to remind you to be mindful of your voice volume.*** Thanks." (Rec. Doc. 43-26, Exhibit 24) (emphasis added). The Court notes that while this email establishes that Bobadilla learned about Markiewicz's hearing issue in 2010, it also establishes that Bobadilla's concerns with Markiewicz's voice volume *predated* any knowledge about Markiewicz's hearing loss. (*Id.*) (Markiewicz: "I was not sure if you were aware that I am deaf in my left ear . . . .").

Markiewicz's wall or her counter and make shh'ing gestures to her.

On April 13, 2018, Bobadilla sent an email to Markiewicz stating "Little loud." (Rec. Doc. 43-27, Exhibit 25). On April 24, 2018, Bobadilla sent an email to Markiewicz stating "Please lower your voice   -- I can hear you in my office." (*Id.*). On November 1, 2018, Bobadilla sent an email to Markiewicz stating that "FYI I can hear you in my office."[18]  (*Id.*).

Regarding migraine headaches as a claimed disability, Markiewicz contends that she was harassed by Bobadilla and Tim Hassinger. As noted earlier, Markiewicz had been allowed to remove one light bulb from her workstation as an accommodation for migraines but this caused the lighting to flicker. The harassment Markiewicz complains about is that Hassinger would flicker her lights and Bobadilla would walk past her and comment "how do the people sitting next to you see?" (Rec. Doc. 40-43, Markiewicz deposition at 191). Bobadilla would also makes comments about how dark it was looking over by Markiewicz's area. Bobadilla once made a comment that Markiewicz was always absent because of her migraines. (Rec. Doc. 40-43, Markiewicz deposition at 188). These comments were made a handful of times. (*Id.* at 191).

Galloway's challenge to the ADA workplace harassment claim focuses on two elements. First, Galloway contends that Markiewicz cannot show that any of the comments or conduct are based on disability or in any manner connected to her conditions. Second,

---

[18]  Galloway included with its exhibits an email from November 2012 in which Herrington-Loup asked Markiewicz to be more mindful of her language because while some clients were in the office she could hear Markiewicz say "f—ing c—nt" through the office wall and was pretty sure that the clients had heard it also. (Rec. Doc. 40-8, Exhibit D-3). Markiewicz's reply was that because of her bad ear she could not tell how loud she was. Markiewicz does not cite this email as an example of harassing conduct nor could she plausibly do so. A disability is no excuse for such deplorable, vulgar language in an office environment. What this email demonstrates is that Markiewicz was loud and that Galloway had legitimate non-disability-related concerns when reminding her about it.

Galloway argues that even if the conduct was based on disability, it is neither severe nor pervasive enough to rise to the level of actionable workplace harassment.

The Court agrees that the "harassment" that Markiewicz has identified is neither severe nor pervasive enough to rise to the "high" level of actionable workplace harassment in this circuit. The comments and conduct were neither threatening nor humiliating and occurred only a few times throughout the decade that Markiewicz worked for Galloway.

In support of her contention that the harassment was severe and pervasive enough to have altered the conditions of employment and created an abusive working environment, Markiewicz points out that Bobadilla reprimanded her on June 1, 2018, for errors in her work and advised her to "concentrate on the task at hand with more focus." (Rec. Doc. 43-27, Exhibit 25). This admonition was received via an email that was sent by Bobadilla during the same timeframe in 2018 when Bobadilla had been emailing Markiewicz about her voice volume.

In Markiewicz's reply email to Bobadilla, she attributed the errors to running late on that particular day to a doctor's appointment, and being extremely busy that particular week. (*Id.*). Certainly, nothing suggests that the noted performance problems had anything to do with the two "loud" emails that Bobadilla had sent back in April—and the November "loud" email came *after* Bobadilla's email about the errors. But even beyond that, an employee's "subjective physical and emotional reactions" to her employer's conduct, "do not establish that the work environment would have been perceived as hostile or abusive by a reasonable employee." *Credeur v. Louisiana Through Off. of Att'y Gen.*, 860 F.3d 785, 797 (5th Cir. 2017) (citing *Kumar v. Shineski*, 495 Fed. Appx. 541, 543 (5th Cir. 2012)).

Galloway's motion for summary judgment is GRANTED as to the ADA workplace

harassment claim.

###### C.     Gender-based Harassment

Markiewicz's gender harassment claim is based on her belief that Bobadilla, who is a female, had issues with her, and that the reason for those issues was because Markiewicz was a woman. (Rec. Doc. 40-3, Markiewicz deposition at 113). Markiewicz believed that the issues were due to her gender because of comments that Bobadilla would make from time to time. (*Id.* at 114). According to Markiewicz, "[m]any times [Bobadilla] would be like, 'Why can't you be like the other ladies? They mind their own business. They do this, they do that. Can't you be like the other ladies?" (*Id.* at 115). In other words, Bobadilla believed that Markiewicz, as a female, should appropriately be "[q]uiet, complacent, fall in line, stop complaining about her associates when they'd be wrong." (*Id.*). Markiewicz's Title VII workplace harassment claim is based on same-sex gender stereotyping.

Where a Title VII harassment claim arises out of a supervisor's conduct, there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on a protected characteristic; and (4) that the harassment affected a 'term, condition, or privilege' of employment. *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (citing *Lauderdale v. Tex. Dep't of Criminal Justice,* 512 F.3d 157, 162–63 (5th Cir. 2007)). To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* (quoting *Aryain v. Wal–Mart Stores of Tex., L.P.,* 534 F.3d 473, 479 (5th Cir. 2008) (alteration in original)). Courts use an objective "reasonable person" standard to evaluate severity and

pervasiveness. *Boh Bros.*, 731 F.3d at 453 (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 82 (1998)). Ultimately, whether an environment is hostile or abusive depends on the totality of circumstances. *Id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).

A plaintiff may rely on gender-stereotyping evidence to show that discrimination occurred "because of . . . sex" in accordance with Title VII. *Id.* (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989)). A plaintiff can satisfy Title VII's because-of-sex requirement with evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes. *Id.* (citing *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir. 1994)).

Assuming arguendo that Bobadilla's comment was indicative of gender stereotyping,[19] this comment in insufficient as a matter of law to establish the level of severe or pervasive harassment necessary to support an actionable Title VII claim.

In support of her claim Markiewicz points to her time working with attorney John Getty, who left the firm in July 2018. She contends that Galloway's decision to assign her to him—apparently he was difficult to work for, used gender-based slurs, and suggested that he might get angry enough to punch Markiewicz in the face—demonstrates that the firm viewed her as nonconforming to the "demure" stereotype of a woman.

Mr. Getty's reprehensible conduct does not establish that any of Bobadilla "issues" with Markiewicz were because she was a woman or that Bobadilla subjected her to the level

---

[19] When Bobadilla's statement about the other "ladies" is considered in context it loses what at first blush appears to be gender specific stereotyping. While Galloway has male and female attorneys, all of the support staff are females. Markiewicz understood that the reference to the other ladies meant the staff. (Rec. Doc. 40-3, Markiewicz deposition at 39). So it would seem most likely that what Bobadilla was telling Markiewicz was to behave more like the other staff members, not like stereotypical "ladies" in general.

of harassment required to support an actionable Title VII claim.[20]

Galloway's motion for summary judgment is GRANTED as to the Title VII gender workplace harassment claim.

## III.    DISCUSSION—MOTION IN LIMINE

Galloway has filed a motion in limine seeking to exclude the following evidence: 1) any evidence of alleged harassment by former attorney John Getty; 2) any evidence of Markiewicz's requests for accommodations under the ADA and Galloway's responses thereto; 3) any evidence of PTSD; and 4) any evidence of wage damages incurred by Markiewicz following her decision to take herself out of the workplace as of March 2020.

The only claim that survives following Galloway's motion for summary judgment is Markiewicz's FMLA retaliation claim.

The motion is GRANTED as to any evidence of alleged harassment by former attorney John Getty. That evidence is irrelevant to the FMLA retaliation claim.

The motion is GRANTED as to any evidence of Markiewicz's requests for accommodations under the ADA and Galloway's responses thereto. That evidence is irrelevant to the FMLA retaliation claim.

The motion is MOOT as to any evidence of PTSD. Markiewicz has not been diagnosed with PTSD and does not intend to suggest to the jury that she has been diagnosed with it.

The motion is DENIED as to any evidence of wage damages incurred by Markiewicz after March 2020. It will be for the jury to determine (assuming that Markiewicz prevails on

---

[20] To be clear, Markiewicz is not bringing a claim based on Getty's conduct but cites it for background purposes only.

the merits of her FMLA retaliation claim) whether or not Markiewicz's actions in March 2020 demonstrate a failure to mitigate that ended her right to seek recovery after that point in time.

**IV.     CONCLUSION**

Galloway's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. The motion is DENIED as to the FMLA retaliation claim, which will be scheduled for trial. The motion is GRANTED as to the FMLA interference claim, the ADA failure to accommodate claim, the ADA harassment claim, and the Title VII gender harassment claim.

Galloway's motion in limine is GRANTED IN PART AND DENIED IN PART as explained above.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 40)** and the **Motion in Limine (Rec. Doc. 42)**, both filed by the defendant, Galloway, Johnson, Tompkins, Burr, and Smith, APLC are **GRANTED IN PART AND DENIED IN PART** as explained above.

**IT IS FURTHER ORDERED** that a status conference with the Court is set for **Thursday, October 27, 2022, at 11:15 a.m.** in chambers.

October 18, 2022

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE